Jane S. Avery, Respondent, v. The Equitable Life Assurance Society of the United States, Appellant.

To sustain an action to reform a written contract it must be made to appear that there was a mutual mistake whereby the agreement states less or more than was intended by the parties, or some fraud or imposition whereby an unconscionable advantage is or may be had by one over the other.

The complaint in an action to reform a policy of insurance alleged, in substance, that it was agreed between defendant and plaintiff's husband that the former would issue a policy on the life of the latter on a plan known as "the Tontine Savings Fund Policy" for the sole use of plaintiff for the sum of $10,000, to be paid if death occurred within fifteen years; if he survived that period, then plaintiff might elect to withdraw in cash $7,170; that thereupon defendant gave a memorandum set forth in the complaint in which, under the heading of "estimated results" among other items is the following: "Total cash value $7,170." The complaint then set forth the policy which contained clauses to the effect that all surplus or profits from policies on said plan which shall cease to be in force upon the completion of the respective tontine dividend periods "shall be apportioned equitably among such policies as shall complete the period," and that upon the completion of the period of plaintiff's policy the legal holders shall have the option "to withdraw in cash this policy's entire share of the assets." The relief asked was that this last clause be reformed so as to give plaintiff the option to withdraw $7,170. There was no averment of a mutual mistake or of

fraud or misrepresentation. *Held*, that a demurrer to the complaint was improperly overruled; that the assured was bound to know that the liability of the company in that plan of insurance was contingent and indeterminable in advance; that the estimate presented did not amount to a misrepresentation.

Also, *held*, the fact of the acceptance and retention of the policy until the expiration of the fifteen years, without taking any steps for reformation, deprived the case of any equitable feature.

*Maher* v. *H. Ins. Co.* (67 N. Y. 283.)

*Avery* v. *Eq. L. As. Soc.* (52 Hun, 392) reversed.

(Submitted November 25, 1889; decided December 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 13, 1889, which affirmed an interlocutory judgment, entered upon an order of Special Term overruling a demurrer to plaintiff's complaint.

The substantial averments of the complaint are set forth in the opinion.

*Alexander & Green* for appellant. This action is simply for the reformation of a written contract, and the enforcement of it as reformed. (Code of Civ. Pro. § 483 ; *Briggs* v. *Oliver*, 68 N. Y. 336 ; *Kelly* v. *Downing*, 42 id. 71, 77.) Plaintiff's delay, shown on the face of the complaint, deprives her of any standing in court to demand the reformation of the policy. (*Peck* v. *Gurney*, L. R., 13 Eq. 79, 120 ; *McKnight* v. *Taylor*, 1 How. 161, 168 ; Willard's Eq. Jur. 69 ; Pomeroy's Eq. Jur. § 817 ; *Sheldon* v. *Rockwell*, 9 Wis. 166, 181 ; *Syms* v. *Mayor, etc.*, 18 J. & S. 289, 294 ; *Sable* v. *Maloney*, 48 Wis. 331 ; Code of Civ. Pro. § 388 ; *Madan* v. *Sherard*, 73 N. Y. 329, 334.) The relief asked for is inconsistent with the essential nature of the whole contract sued on, and with those provisions thereof whose correctness and validity the plaintiff affirms. (*Uhlman* v. *N. Y. L. Ins. Co.*, 109 N. Y. 421 ; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 id. 328, 338.) A tontine policy creates inter-dependent rights among all the members of the tontine class, and no policy belonging to the class can be so altered as to put the dividend of its holder upon a different basis from those of other members of the class. (*Bogardus* v.

*N. Y. L. Ins. Co.,* 101 N. Y. 328, 338.) This suit for a reformation of the contract cannot be maintained, because the complaint does not allege that the terms of the contract were not known to and accepted by her, or that it was not drawn in precisely the form intended and assented to by her. (*Syms* v. *Mayor, etc.,* 18 J. & S. 289, 294 ; *Moran* v. *McLarty,* 75 N. Y. 25, 29 ; *Pindar* v. *R. F. Ins. Co.,* 47 id. 114, 118 ; *Long* v. *N. Y. C. R. R. Co.,* 50 id. 76, 78 ; *Madan* v. *Sherard,* 73 id. 329, 334 ; *Treacey* v. *Hecker,* 51 How. Pr. 69, 70 ; *Whittemore* v. *Farrington,* 76 N. Y. 452, 458 ; *Wilson* v. *Deen,* 74 id. 532, 534, 536 ; *Stoddard* v. *Hunt,* 23 id. 556, 562 ; *Duffany* v. *Ferguson,* 66 id. 480, 484, 485.) We can find nothing in the case but the often-repeated attempt to obtain the benefit of alleged oral stipulations, relating to a subject as to which a written agreement has been made, in which such stipulations are not contained. ( *Wilson* v. *Deen,* 74 N. Y. 532, 537.) If any prior or contemporaneous agreement was made, varying or controlling the provisions of the writing, it cannot be enforced in this action. ( *Wilson* v. *Deen,* 74 N. Y. 532, 534 ; *Whittemore* v. *Farrington,* 76 id. 452, 458 ; *Pindar* v. *R. F. Ins. Co.,* 47 id. 114, 117, 118 ; *Johnson* v. *Oppenheim,* 55 id. 280, 293 ; *Long* v. *N. Y. C. R. R. Co.,* 50 id. 76, 78 ; *Pohalski* v. *M. L. Ins. Co.,* 4 J. & S. 234, 249 ; *N. M. L. Ins. Co.* v. *Mowry,* 96 U. S. 544 ; 3 R. S. [7th ed.] 2327.) This action cannot be maintained for the reformation of the contract, because the complaint does not allege either a mutual mistake in framing the contract as it now is, or mistake therein on the part of the plaintiff and fraud on the part of the defendant. (*Story* v. *Cruger,* 36 N. Y. 673, 676 ; Pomeroy's Eq. Jur. §§ 855, 859 ; *Nevins* v. *Dunlap,* 33 N. Y. 676, 680 ; *Mead* v. *W. F. Ins. Co.,* 64 id. 453, 455 ; *Bryce* v. *L. F. Ins. Co.,* 55 id. 240, 242 ; *Jackson* v. *Andrews,* 59 id. 244, 247 ; *Whittemore* v. *Farrington,* 76 id. 452, 458 ; *Wilson* v. *Deen,* 74 id. 532, 534, 536 ; *Treacey* v. *Hecker,* 51 How. Pr. 69, 70 ; *S. .I. Co.* v. *H. I. Co.,* 102 Mass. 45, 49 ; *Stoddard* v. *Hunt,* 23 N. Y. 556, 562.) The complaint shows that the plaintiff received the amount due on the

policy as it stood, and surrendered it to the company; the plaintiff's remedy, if any, therefore, is not by reformation of that policy as prayed in this action. (*Steinbach* v. *R. F. Ins. Co.*, 77 N. Y. 498, 502; *Washburn* v. *G. W. Ins. Co.*, 114 Mass. 175.)

*Phillips & Avery* for respondent. The complaint alleges a complete oral contract of insurance, preliminary to a policy. Such a contract is valid and would have been enforced by the court. (*Hubbell* v. *P. M. Ins. Co.*, 100 N. Y. 41; *Ellis* v. *A. C. F. Ins. Co.*, 50 id. 402, 405.) The court has the power to reform the policy, and to make it truly state what the parties in fact agreed to. (*Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283.) The action may be brought for a reformation, and at the same time for a recovery upon the contract when reformed. This action is in proper form. (*Maher* v. *H. Ins. Co.*, 67 N. Y. 292; *Bidwell* v. *A. Ins. Co.*, 16 id. 263, 266.) Defendant was asked concerning the interpretation and meaning of the policy, and assumed and undertook to interpret it to the plaintiff, and construed the contract for plaintiff. Such construction must control in the nature of an estoppel. (*Reading* v. *Gray*, 5 J. & S. 79; *Van Schaick* v. *N. F. Ins. Co.*, 68 N. Y. 434; *Wendell* v. *Stone*, 39 Hun, 383, 384; *Maher* v. *H. Ins. Co.*, 67 N. Y. 283, 289, 290.) Parol evidence is admissible to show what the real contract was, and this even where defendant claims that the written contract expresses the whole thereof. (*Hoag* v. *Owen*, 57 N. Y. 644, 645.) It has been a common practice for courts to reform insurance policies and to make them conform to the preliminary oral agreement. (*Van Tuyl* v. *W. Ins. Co.*, 55 N. Y. 657; *Bidwell* v. *A. M. Ins. Co.*, 16 id. 263; *Van Schaick* v. *N. F. Ins. Co.*, 68 id. 434; *Scott* v. *P. M. R. Assn.*, 15 Ins. L. J. 850; *Palmer* v. *H. Ins. Co.*, 16 id. 241, 248, 252.) Any claim of statute of frauds is not available upon demurrer; it must be pleaded by answer. (*Marston* v. *Swett*, 66 N. Y. 206; *Duffy* v. *O'Donovan*, 46 id. 226; *Kent* v. *Kent*, 62 id. 560, 564; *Wheeler* v. *Reynolds*, 66 id. 227, 237; *Parkhurst* v. *Van*

*Cortland,* 14 Johns. ˹16, 35, 36; *Miller* v. *Ball,* 64 N. Y. 286, 291, 292; *Wendell* v. *Hirt,* 39 Hun, 382, 383, 384; *Ryan* v. *Dox,* 34 N. Y. 307, 311; *Wood* v. *Rabe,* 96 id. 414, 425, 426; *Sherman* v. *Scott,* 27 Hun, 331, 333; *Robbins* v. *Robbins,* 89 N. Y. 255, 257; *Harris* v. *Columbia M. I. Co.,* 18 Ohio, 116, 122.) The preliminary oral agreement to give a policy containing a provision that plaintiff could withdraw the sum of $7,170, and this coupled with the renewed representations, statements and agreements, made at the time of the delivery of the policy, and by which same was interpreted, that the same gave such right, constituted a warranty, which would sustain this action. (*Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 343.) The complaint should be liberally construed, and if the facts herein present any cause of action entitling the plaintiff to any relief, legal or equitable, a demurrer thereto for insufficiency will be overruled. (*Marie* v. *Garrison,* 83 N. Y. 23; *Wetmore* v. *Porter,* 92 id. 76, 80; *Price* v. *Brown,* 10 Abb. N. C. 67; *Conaughty* v. *Nichols,* 42 N. Y. 86; *Mackey* v. *Brown,* 8 Hun, 183.) The plaintiff is not barred of her action because she received the sum paid by the defendant on account of the amount due. In any event, the premiums actually paid should be returned with interest. These premiums, with simple interest, exceed the sum of $7,170, the amount claimed by plaintiff to have been agreed upon. (*Wood* v. *Schultis,* 4 Hun, 309; *Ryan* v. *Dox,* 34 N. Y. 307, 309; *Wetmore* v. *Porter,* 92 id. 76.)

GRAY, J. This action was brought by plaintiff to have a policy of assurance reformed in certain respects, and, as reformed, to recover thereupon against the defendant a certain sum of money.

The complaint was demurred to on the ground that it did not state facts sufficient to constitute a cause of action. It alleges that in the year 1873 the plaintiff's husband was solicited by the defendant to assure his life on a plan known as the "Tontine Savings Fund Policy;" that it was agreed between those parties that a policy was to be delivered assur-

ing, for the sole use of the plaintiff, her husband's life in the
sum of $10,000 on these terms, viz. : That sum was to be paid
if death occurred within fifteen years; but, if the husband
survived, the plaintiff might elect to withdraw in cash, at the
end of that period, $7,170; that thereupon defendant gave a
certain memorandum, which the plaintiff incorporates with her
pleading, and which stated the "options," which would be
available to her; that thereafter the policy in question was
issued; and it also is incorporated in the plaintiff's pleading.
The complaint avers that before the acceptance of the policy
and the payment of the first premium, it was again represented
to the plaintiff's husband that the contract was that plaintiff
would receive the amount of $7,170, if her husband survived
the period of fifteen years, and that she would receive the
sums and privileges stated in the memorandum referred to.
It further appears from the complaint that just before the
expiration of the fifteen years the defendant notified plaint-
iff's husband that he could surrender the policy and receive
the cash sum of $5,076.80; that, upon the expiration of the
fifteen years' period, the husband surrendered the policy and,
with plaintiff, declared an option to have from defendant the
sum of $7,170 and demanded payment of that amount, which
defendant refused to pay ; that plaintiff thereupon received
the aforesaid sum of $5,076.80, tendered by defendant, only
on account, and still claiming the difference between the two
sums.   The plaintiff prays for a reformation of the policy, in
that portion, wherein the option to the holders are expressed,
so that it shall read as the first option that the amount to be
withdrawn in cash is $7,170.

The memorandum, which the complaint incorporates, and,
in fact, rests upon mainly, as embodying the preliminary
agreements of the parties, is headed " Tontine Savings Fund
Policy," and then follows, over the body of the instrument,
the words, "Estimated results." Those results, upon data
covering the case at hand, among other items of estimates,
mention as the " total cash value " the sum of $7,170.   Then
follow, beneath, three paragraphs containing privileges to the

assured, not necessary to repeat, as the second simply states again as the total cash value of the policy the said sum of $7,170. The policy of assurance contained the following clause, viz. : " This policy is issued and accepted by the assured upon the following special agreements and conditions relative to Tontine Savings Fund Policies : First. That this policy is issued under the Tontine Savings Fund plan." The fourth of the conditions mentioned states that " all surplus or profits from such polices on the Tontine Savings Fund Assurance plan as shall cease to be in force upon the completion of their respective tontine dividend periods, shall be apportioned equitably among such policies as shall complete their periods." The fifth paragraph of the special agreements and conditions is the one sought to be reformed, and it provides " that upon the completion of the tontine dividend period of the 30th of December, 1887, * * * the legal holders shall have the option : First. To withdraw in cash this policy's entire share of the assets, whether in the reserve fund proper or in the accumulated surplus."

The question before us is whether these facts, if taken as true, as they must be under the demurrer, give to the plaintiff a cause of action against the defendant for the reformation of the policy. The defendant is deemed to concede everything in the plaintiff's favor, as to the facts ; but not her construction of the instruments, or her inferences and conclusions from the facts. In actions to reform written instruments the rules are familiar and well established by repeated decisions of the courts. At the foundation lies the general principle that where equitable relief is sought, the case must disclose facts, which constitute an effective appeal to the conscience of the court and move it to interfere to mitigate the rigorous rules of the law. It is the province of a court, exercising equity powers, to administer justice between parties, where, for want of an adequate remedy at law, they would be without redress ; in respect of matters, where good and cogent reasons exist for relief being granted. Such reasons, in cases like the one at bar, where it is sought

to reform, that is to say, to alter, or change, the terms and conditions of a written agreement between parties, must exhibit the existence of a mutual mistake, whereby the agreement really states less, or more, than was intended by the parties;. or of some fraud, or imposition, whereby an unconscionable advantage is, or may be had by one over the other.   An agreement between parties is presumed to contain what they intended and to comprise their whole sense of the subject-matter and, therefore, when it is made to appear that, by a mutual error, the contract varies from their intent; or that, by some fraudulent practices, there has been a suppression, or omission, or insertion of material matter, which would operate as a surprise, or a fraud upon a party, ground for relief is made.   So, too, equity will relieve, where there has been a. misrepresentation of some important fact, by which a party is. misled to his disadvantage, or so entrapped as that an undue advantage is gained over him.   It is unnecessary to cite authorities in support of these familiar principles.   They are found discussed in Judge STORY's work on Equity Jurisprudence, under the titles of Fraud and Mistake.

Now, the design and purpose of equity being to reconstitute an agreement between parties, where some positive proof shows that it is not, in material respects, in truth, such as was intended by them, does the plaintiff make out an equitable case for the interference of the court?   I am unable to say that she does.   We must consider the question as affected by the incorporation of the contract in the plaintiff's complaint. She does not pretend that any fraud, or any imposition was practiced upon her, by which she was induced to accept the policy, nor that there was any fraudulent suppression or omission of any part of their agreements.   She does not show that there was some mistake in the contract of assurance, which was mutual, or which resulted in mutual error.   Her whole subject of complaint is that the defendant's representation as to the sum payable in a certain contingency was not contained as an agreement of the policy.   But is that a well-founded basis of complaint on her part?   What was solicited

459.] AVERY v. EQUITABLE LIFE ASSURANCE SOCIETY. 459


Opinion of the Court, per GRAY, J.

of her husband to take out, and what he agreed to and did accept, was a peculiar form of policy, differing from the plain and ordinary contract of life assurance, under which the defendant would become liable for a certain sum, and only upon the death of the assured. Under the policy negotiated for, if the assured survived the stated period of fifteen years, the sum he might elect to receive in cash was, in its nature, uncertain, and, in the nature of things, incapable of being exactly computed in advance. This appears from the language of the policy itself, which describes it as issued under the tontine savings fund plan, and indicates its speculative possibilities, in declaring it entitled to an equitable apportionment, with other like policies, of the surplus or profits derived from such policies in the class as shall cease before the completion of their respective tontine dividend periods. The plaintiff expressly alleges that such was agreed upon as the policy, and the memorandum, which she rests upon as representing what was to be the defendant's agreement of assurance, describes the proposed policy as of that nature.

These policies have been the subject of consideration in this court, and notably in the recent cases of. *Bogardus* v. *New York Life Insurance Company* (101 N. Y. 328) and *Uhlman* v. *N. Y. L. Ins. Co.* (109 id. 421). The character of such policies is described in the opinions in those cases as involving the amount of the fund, out of which the dividend shall be paid to the surviving holder, in uncertainty, and, hence, creating a liability on the part of the company to him under such a policy, which was necessarily contingent and could only be determined when, at the end of the dividend period, the aggregate of the fund from accretions, interest, etc., could be ascertained for division among the survivors. When the assured accepted the policy, he was chargeable with the knowledge of its terms and provisions. Ignorance is not pleaded, and ignorance of the legal effect of the contract would not be an excuse. The knowledge imputable to him and to the plaintiff involves a comprehension of the contents of the policy, and, equally, of the contingent nature of the option available to the holder,

upon the expiration of the tontine period. The assured was bound to know that the liability of the company on that plan of insurance was contingent upon several elements and indeterminable in advance. This was indicated to him, not only by the nature of the engagement itself, but the preliminary memorandum only represented estimated results. His position here is at war with his position as defined by the complaint. He now argues as though there had been a mutual intent that a certain sum should be paid, while the complaint, on its face, makes out a case of a contract of assurance, the outcome of which, in the respect discussed, was essentially contingent upon events not possible of forecasting. He engaged in a plan of assurance, which presented the possible chance of a return to him of a dividend, in certain contingencies, which would represent considerably more than his payments of premiums, and which he entered into on certain estimates of results furnished him by the company. Now, I think, we may assume that the defendant's officers made these estimates as liberal as it was possible, and that they represented the chances in as favorable a light as they could. That is quite possible and probable; but that assumption would not affect the question. The results of such a plan of assurance were matters of opinion, and they are not considered as important in equity. The avenues of inquiry were equally open to the parties, and probably the experience of the officers was of more use to them than to the general public. Their statements of what the assured might possibly gain under that plan do not amount to misrepresentation; and if the assured accepted the policy, relying upon them, and the result is not as supposed or estimated, that presents no ground for relief. It was, and in the very nature of the plan could only be, problematical or speculative. The figuring out of the chances of the assured in the chances of all his class, could only be based on hypothetical facts and figures.

The case of *Maher* v. *Hibernia Insurance Company* (67 N. Y. 283) is inapplicable as an authority for the plaintiff. The proof in that action showed that both the plaintiff and

the agent of the defendant meant to insure a building, as occupied otherwise than only as a dwelling house ; but terms were used in the policy which were not apt to so describe it, while intending to properly describe its uses. The court there held that evidence of the mutual mistake, to the satisfaction of the jury, would, under the averments, even without a specific allegation of a mistake of fact, warrant the reformation of the contract. Folger, Ch. J., said : "It is enough to authorize the reformation of a contract if it appears that, through the mistake of both parties to it, the intentions of neither have been expressed in it." That is not this case ; for here the only mistake, predicable of the facts, is the mistake of the plaintiff, or of the assured, in supposing that, under that plan of *quasi* speculative assurance, exact estimates could be made of the dividend, which, at the expiration of the period, would be declarable to a policy-holder surviving in his class.

In addition to the absence of averments of facts making out any agreement, or disclosing any intention that the policy should contain an option for a withdrawal of the cash sum named, at the expiration of the fifteen years, the fact of the acceptance and retention of the policy during that period of time, without taking any steps for reformation, deprives the case of equitable features and seriously assails the good faith of the plaintiff in her present attempt to charge the defendant with a liability, inconsistent with the terms of its contract.

If the views I have expressed are correct, it follows that the defendant's demurrer should have been sustained and that the judgment appealed from should be reversed, and a judgment ordered to be entered in favor of the defendant upon the demurrer, with leave to plaintiff to amend upon payment of the costs of the action in all the courts.

All concur.

Judgment accordingly.