(31 Misc. Rep. 403.)

### WILSON v. NATIONAL LIFE INS. CO.

(Supreme Court, Special Term, New York County. May, 1900.)

INSURANCE—REFORMATION OF POLICY—REPRESENTATIONS OF AGENT—EVIDENCE.
Evidence that one claiming to be a special agent of defendant verbally represented to plaintiff that defendant's 20-year "installment bond" policy contained an option to the insured, upon payment of the premium thereunder for 10 successive years, to have such policy converted into a paid-up policy, payable upon the death of the insured, and that in consideration thereof plaintiff made a written application for insurance, wherein it was agreed that no representations made by the soliciting agent should be binding upon defendant unless presented to it in writing; that the policy issued to plaintiff was received and held by him, and the premium paid thereon, for over 10 years, before he discovered that the option clause referred to was not contained therein; and that defendant never at any time issued an installment bond policy containing an option to the insured to demand a paid-up policy, nor authorized said representations, nor recognized said agent,—is not sufficient to entitle plaintiff to a reformation of the policy received by him so as to make it conform to the representations of said agent.

Action by John W. Wilson against the National Life Insurance Company for the reformation and enforcement of a policy of life insurance. Judgment for defendant.

Henry D. Hotchkiss, for plaintiff.
W. B. Ellison, for defendant.

SMYTH, J. This action is brought to reform, and enforce as reformed, an "installment bond" or policy of insurance issued by the defendant to the plaintiff on the 8th of January, 1899, for the sum

of $1,000, being one of 10 similar installment bonds or policies, all of which were issued at the same time by the defendant to, and accepted by, the plaintiff. By the instrument in question the defendant promised to pay to the plaintiff $1,000 20 years from the date thereof, or, if he should decease before that date, then to pay said amount to his wife and children, share and share alike. The consideration for such promise was the payment of an installment of $51.50 at the date of said bond, and an agreement on the part of the plaintiff to pay a like sum on or before the 8th day of January in every year thereafter until 20 annual installments have been paid, or until plaintiff's decease. The plaintiff claims that the instrument in question does not contain the terms and conditions of the agreement made between him and one Robbins, whom he claims was the duly-authorized agent of the defendant, and upon whose representations and solicitations plaintiff was induced to apply, and did apply, in writing, to defendant for insurance upon his life under a form of policy known as an "installment bond," which form of policy said Robbins also represented and warranted would and did contain a privilege and option to the plaintiff that, upon the payment by him, on or before the 8th day of January in each year, of the annual premium to be therein fixed, for 10 successive years, the defendant would, upon demand, convert such installment bond into and would issue to plaintiff a paid-up policy in lieu thereof, upon which policy no further installments or premiums would be required, and that, upon plaintiff's death, would entitle his wife and children to the sum of $1,000. This action is brought to conform the provisions of the installment bond in question to the terms and conditions upon which the plaintiff alleges he agreed to effect such insurance. The only evidence tending to sustain such alleged agreement between Robbins and the plaintiff is the testimony of the latter, Robbins having died before the commencement of this action. The plaintiff testified substantially that Robbins made the representations and statements above referred to, and relying upon such representations he filled in and signed an application given him by Robbins, of which the following is a copy:

"Application.

"To the National Life Insurance Company of Vermont for 10 installment bonds, amounting to $10,000.00; years to run, 20; by John Wilson; residence, Brooklyn, Kings county, New York; place of birth, Elizabeth, N. J.; on the 2d day of September, 1841. Present health of applicant, good. Age, 47. How many near relatives have been afflicted with or died of consumption? None. Installment, $51.50 per $1,000.00. How paid? Annually. Beneficiary, relationship. Wife and children, share and share alike.

"Dated at New York, January 4, 1889.

"[Signed]                                    J. Wilson.

"Witness:    J. P. Sutherland.

"W. E. Robbins, Special Agent."

That he subsequently received from Robbins a paper entitled an application to the defendant for life insurance, containing the usual questions put to persons applying for life insurance, and requiring his answers thereto, and also a report of the medical examiner, to whom plaintiff was required to submit himself for examination. The

plaintiff answered the several questions propounded to him, and submitted to the medical examination.

The last-mentioned application for insurance contained the following agreement on the part of the plaintiff:

"That inasmuch as only the officers of the home office * * * have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and applications referred to, it is expressly understood and agreed that no statements and representations made or given by or to the person soliciting or taking this application for a policy, or any other person, shall be binding upon the company [defendant], or in any manner affect its rights, unless such statements, representations, or information be reduced to writing, and presented to the officers of the company at the home office."

It further appears that the documents containing such statements and declarations of the plaintiff were received by the defendant, and form the basis of the contract of insurance contained in said installment bond, which the plaintiff concedes was issued by the defendant to and accepted and retained by him without objection for a period of upwards of 10 years, and that he paid the annual installments or premiums as they became due for 10 successive years without objection. The plaintiff testified that when he received and accepted the bond he made no examination of its terms, except to see that it contained the names of the beneficiaries, and that until the eleventh installment was about to become due he did not discover the fact that it did not conform to the terms of the agreement between him and Robbins, upon the faith of which he claims he relied; that he then called upon the general agent of the defendant in this city, and was informed by him, in effect, that during his experience as such agent he had no knowledge that a policy containing an option such as referred to by the plaintiff had ever been issued by the defendant; that said general agent subsequently wrote to the defendant in reference to plaintiff's claim, and was informed that no such form of policy was ever issued by it; and that Robbins had never been its agent, or authorized to make any such contract in its behalf; which he communicated to plaintiff. The proof on the part of the defendant clearly establishes the fact that Robbins was not, and never had been, defendant's agent, and had no authority whatever to contract for or bind it; that the pamphlet containing "options," which the plaintiff claims was delivered to him by Robbins, was never issued by its authority, and that the defendant had no knowledge of the existence thereof; and, further, that the defendant did not at any time issue installment bonds containing options to the insured to demand or receive paid-up policies therefor.

A court of equity has jurisdiction to reform a written instrument in but two well-defined cases, viz.: First, when there is a mutual mistake, and the written instrument does not express what was really intended by the parties thereto; and, second, when there was a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties (3 Pom. Eq. Jur. § 1376); and the evidence to justify the court to decree a reformation on the ground of mistake must be clear, positive, and convincing. The evidence on the part of the plaintiff does not come up to the requirements of

the law in cases of this character. At most, it establishes a fraud practiced by a person claiming to be the agent of the defendant, but whom the proof shows was not, and never had been, such agent, and there is a complete failure of proof showing that the defendant had any knowledge of, or in any way ratified or approved of, his alleged fraudulent and unauthorized acts. The evidence convinces me that the instrument which it is sought to reform is in strict accordance with the provisions of the written applications made by the plaintiff therefor, and which formed the basis of the agreement to insure his life; that he knew the contents of the application; and that the statements and representations therein contained formed the basis of the contract of insurance between him and the defendant. It was his duty to ascertain whether the papers referred to contained the terms of the alleged agreement between him and Robbins, and it was also his duty, by an inspection of the installment bond in question, before he accepted it and paid the first and subsequent installments thereon, to inform himself as to whether it did or did not contain the terms of the agreement upon which he claims he was induced to insure in the defendant's company. The instrument or policy in this case is remarkable for its clear and concise terms, which are easily understood by a person of the most ordinary intellect. In this case the plaintiff was shown to be a merchant by calling, of mature age, and not laboring under any mental or physical disability, and that he was familiar with the business of effecting life insurance. He was also informed of the fact that he was dealing with a person described as a "special agent," and it was his duty to ascertain the extent of that person's power, and what, if any, authority he had to represent or bind the defendant. The plaintiff was clearly guilty of inexcusable negligence, which does not commend his claim to the equitable consideration of the court. It is well settled in actions such as this, and the rule is familiar and well established by repeated decisions, that when equitable relief is sought the case must disclose facts which constitute an effective appeal to the conscience of the court. In this case no such state of facts is shown to exist, and the fact that the plaintiff for over 10 years after the receipt of the instrument or policy in question has chosen to retain it without complaint or objection, paying the installments or premiums as they accrued thereon, and without taking any steps for its reformation, deprives the case of any equitable features, and seriously assails the good faith of the plaintiff in his attempt to charge the defendant with a liability inconsistent with the terms of its contract. Avery v. Assurance Soc., 117 N. Y. 451, 23 N. E. 3. There must be judgment for the defendant dismissing the complaint, on the merits, with costs.

Judgment for defendant dismissing complaint, with costs.