ANDREW LANGDON, Appellant, *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Respondent.

Insurance (life) — action to reform a policy to make it conform to an alleged special contract for life insurance issued by an agent — when such action cannot be maintained.

This action is brought to reform a policy of insurance issued by the defendant to the plaintiff so as to make it conform to an alleged special contract for insurance issued to the plaintiff by the defendant's agent prior to said policy.

Defendant's agent executed an instrument which was prepared on a blank furnished by defendant, the details of names and figures supposed to be applicable to the case at hand being filled in by the agent. It was claimed that this paper was a special contract guaranteeing that a policyholder on tontine principles of insurance would become entitled to a certain sum as his share of surplus at the end of a certain accumulative period. Thereafter, but practically as part of the same transaction, the plaintiff signed a formal application for insurance, in which the policy was sufficiently described as one embracing tontine principles of insurance, and which application contained the following question and answer by the applicant: "Do you understand and agree that no statements, representations or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the Company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the Company at the Home Office in this application? Yes." The "special contract" was not annexed to the application and defendant never learned of its existence until many years after.

A policy was issued to plaintiff in accordance with the application which by its terms plainly and fully indicated that plaintiff's participation in the surplus at the end of the accumulative period was to be governed by the ordinary principles, taking into account the profits of the company during that period, and was not guaranteed or fixed at any specific sum as claimed by him under his alleged contract. Plaintiff retained the policy for about eleven years without reading it or becoming acquainted with its contents, and continued for four years thereafter to pay the premiums thereon without taking any steps for its reformation. The trial court found that the plaintiff was not induced to make his application for said policy of insurance or to pay any premium therefor or to receive or accept said policy of insurance by any misunderstanding or fraud or by any mistake of fact as to

the terms and conditions of his contract of insurance. *Held,* that plaintiff is not entitled to a reformation of the policy; that the original so-called "special contract" issued by defendant's agent did not guarantee any sum certain as plaintiff's share of the surplus at the end of the accumulative period, and further that if it did so do plaintiff lost his rights thereunder by applying for and accepting a policy issued on regular tontine principles which left this share of surplus contingent on the results of the accumulative period.

*Langdon* v. *N. W. Mut. Life Ins. Co.,* 131 App. Div. 922, affirmed.

(Argued May 10, 1910; decided June 17, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 15, 1909, affirming a judgment in favor of defendant entered upon a decision of the court on trial at an Equity Term.

The action was brought in part for the purpose of having a policy of insurance so reformed as to correspond with a certain alleged prior special contract of insurance. The difference between the two, as claimed by plaintiff, was that said alleged special contract provided for the payment to him of a certain fixed sum as his share on principles of tontine insurance in the surplus or profits accumulating during the prescribed accumulative period, whereas the policy provided for the payment only of such sum as he might become entitled to as the result of the experience and business of the company during said accumulative period. That is, as claimed under the special contract he was guaranteed a certain sum as his share of the surplus, whereas under the policy his share was contingent on results during the accumulative period, and as a matter of fact proved to be several thousand dollars less than the sum specified in the alleged contract.

Plaintiff entered into negotiations for the purpose of taking out life insurance with the defendant through its agent at Buffalo. This agent was designated "Associate General Agent," and his duties consisted in a limited territory of soliciting insurance, collecting premiums, settling death losses and the transaction of such other matters as were naturally

incidental thereto. These negotiations between plaintiff and said agent finally resulted in the execution by the latter of a so-called special contract claimed by plaintiff to define and fix his rights of insurance, and which has been made the basis of this action. This paper was signed in the name of defendant by E. H. Whitney, agent, and, so far as material, reads as follows:

" Special contract for Andrew Langdon, Esq.

" Payment Life, 15. Year semi-Tontine. Age 54.
"15 Year Paid-Up. Amount, $30,000. Annual Premium, $2,100.00. Under this contract if death occurs during the 15 year accumulative period, your estate will receive $30,000.00. At the termination of the accumulative period you will have the right to select any one of the following options of settlement:

" First:

" Reserve, $21,215.70.
" Surrender policy for cash.................. $47,026 50
" Surplus, $25,810.80.
" Reserve guaranteed and amount stated in policy.
" Surplus guaranteed, amount estimated, based on past experience.
" Total premium paid in 15 years............. $31,500 00
" 15 years' insurance for Nothing, and profit.... $15,526 50

" Second:

" Paid-up Policy for $66,480, costing only...... $31,500 00 contingent upon good health.

" Third:

" Paid-up policy for $30,000 and cash.......... $25,810.80 with annual dividend during life on the paid-up policy under the 2nd and 3rd options.    *    *    *
" The options at the termination of the accumulative period cannot fail to meet the circumstances of the insured.
" If the first is selected, the policy becomes an endow-

ment, returning profit of $15,526.50, and an insurance for nothing. * * *

"The third option will secure a paid-up policy for $30,000.00, which will draw large annual cash dividends, together with $25,810.80 in cash."

This paper was prepared on a blank furnished by the defendant to its agent, the details of name and figures supposed to be applicable to the case at hand being filled in by the agent. While a number of these blanks had been furnished by the defendant, and while there was evidence that one of them had been filled out and given to some other applicant for life insurance, there was no evidence that such a paper had ever been accepted by or enforced against the company as controlling the policy of insurance finally issued by it.

After this paper had been delivered by the agent to the plaintiff, but practically as part of the same transaction, the latter signed a formal and regular application for insurance addressed to the company. This application amongst other things referred to "Policy form 35 M," and contained as its ninth clause the following: "Policy — Amount $30,000. Kind 15 P. L. 15 Yr. S. T. How Payable — Annually;" and as its eleventh clause contained the following question and answer by the applicant: "Do you understand and agree that no statements, representations or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the Company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the Company at the Home Office in this application? Yes."

The abbreviations "Kind 15 P. L., 15 Yr. S. T." employed in this application to describe the kind of a policy asked for corresponded with the descriptive terms written in full in the "special contract," and, therefore, indicated fully to the applicant that the policy for which he was applying embraced in part at least the tontine principle.

In addition, the trial court found on evidence amply sustain-

ing such findings " That at the time said Whitney (the agent)
solicited said insurance from the plaintiff, and at the time of
the delivery of the typewritten paper, Exhibit A (special con-
tract) to the plaintiff, said Whitney explained to the plaintiff
the nature of the policy of insurance which he would receive,
and stated to the plaintiff that the surplus mentioned in
plaintiff's Exhibit A was an estimated surplus and that the
amount thereof was variable and was dependent upon the
earnings of the. Company," and also " That at the time that
the plaintiff received the typewritten paper plaintiff's Exhibit
A and at the time he signed and delivered to the agent
Whitney, for delivery to the defendant Company his said
application for insurance and at the time he paid his premium
to the defendant he understood that he would, if his applica-
tion for insurance, including his medical examination, was
approved by the defendant Company, receive from it a
written policy of insurance which in itself would embody and
contain each and all of the terms and conditions of his con-
tract for insurance with the defendant."    The evidence shows
almost without contradiction that plaintiff, who had had a
life insurance policy involving the tontine principle before
this one was issued, understood that the tontine principle
involved participation in a certain surplus at the end of the
accumulative period and that the amount of surplus to be
drawn by any policyholder depended on the earnings and
profits of the company during that period, and as already
appears, the sole dispute in this case is whether plaintiff's
share in the surplus was guaranteed at a fixed amount or was
left to be thus determined by the earnings and experience of
the company in accordance with the general rules governing
such kind of a policy.

The " special contract " was not annexed to plaintiff's
application for insurance, and the company never learned of
its existence until may years after.

Some days after plaintiff signed his application for insur-
ance he paid his first premium on the proposed policy, receiv-
ing from the agent then and afterwards by way of rebate a

generous share of the premium paid.   A short time after plaintiff signed and forwarded his application the defendant forwarded to him a policy of insurance in accordance therewith and which by its terms plainly and fully indicated that plaintiff's participation in the surplus at the end of the accumulative period was to be governed by the ordinary principles taking into account the profits of the company during that period and was not guaranteed or fixed at any specific sum as claimed by him under his alleged contract.   Plaintiff says that he received and for about eleven years retained this policy without ever reading it or becoming acquainted with its terms, and that then for four years more under the advice of · counsel and after having become acquainted with its terms and having learned that it was not in accordance with his "special contract," he continued to pay the premiums thereon without seeking by proper proceedings to compel such a reformation of the policy as he now urges to be in accordance with his rights.

The receipt which plaintiff received for his first and advance payment of partial premium from the defendant read in part, "In consideration of the application for $30,000.00 policy, payable at death or in fifteen years, made by Andrew Langdon   *   *   *   there has been collected of him twenty-one hundred dollars, being the annual cash premium on said policy.   If the risk is accepted   *   *   *   the policy will be issued on the following conditions   *   *   *   If the risk is not accepted, the sum collected will be returned within thirty days."

The trial court found that the plaintiff was not induced to make his application for said policy of insurance or to pay any premium therefor or to receive or accept said policy of insurance by reason of any misunderstanding or fraud or by any mistake of fact as to the terms and conditions of his contract of insurance.

*James McCormick Mitchell* for appellant.   The special contract was the contract of the defendant company.   (*Lightbody* v. *N. A. Ins. Co.*, 23 Wend. 18; *Ellis* v. *A. C. F. Ins.*

13

*Co.*, 50 N. Y. 402 ; *Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171 ; *Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5 ; *Ruggles* v. *A. C. Ins. Co.*, 114 N. Y. 415 ; *Forward* v. *C. Ins. Co.*, 142 N. Y. 382 ; *Stewart* v. *U. M. Ins. Co.*, 155 N. Y. 257 ; *Lowenstein* v. *Lombard, Ayers & Co.*, 164 N. Y. 324.)  The special contract was ratified by the defendant company by its acceptance and retention of the plaintiff's first premium paid solely on the faith thereof approximately two months before the delivery of the policy.  (*Stewart* v. *U. M. L. Ins. Co.*, 155 N. Y. 257 ; *Steinbach* v. *P. Ins. Co.*, 62 App. Div. 133 ; *Skinner* v. *Dayton*, 19 Johns. 513 ; *Smith* v. *Tracy*, 36 N. Y. 79 ; *Taylor* v. *Com. Bank*, 174 N. Y. 131 ; *Fairchild* v. *McMahon*, 139 N. Y. 290 ; *Ettlinger* v. *Weil*, 94 App. Div. 291 ; *Hoyt* v. *Thompson*, 19 N. Y. 207 ; *Sheldon Co.* v. *Eickemeyer Co.*, 90 N. Y. 607 ; *Milledge* v. *Boston Iron Co.*, 5 Cush. 158.) The special contract obligated the defendant company to issue to the plaintiff a policy embodying the same options of settlement.  (*Ellis* v. *A. C. F. Ins. Co.*, 50 N. Y. 402 ; *Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171 ; *Squier* v. *H. F. Ins. Co.*, 162 N. Y. 552 ; *Reynolds* v. *W. F. Ins. Co.*, 8 App. Div. 193.)  The plaintiff, appellant, is entitled to a reformation of the policy to conform to the terms of the special contract, whether the variance between the two instruments was caused by fraud or mistake.  (*P. F. Ins. Co.* v. *Gurnee*, 1 Paige, 278 ; *Kilmer* v. *Smith*, 77 N. Y. 226 ; *Hay* v. *S. F. Ins. Co.*, 77 N. Y. 235 ; *Arlt* v. *Whitlock*, 65 App. Div. 246 ; *Curtis* v. *Albee*, 167 N. Y. 360 ; *Steinbock* v. *P. Ins. Co.*, 62 App. Div. 133 ; *Snell* v. *Ins. Co.*, 98 U. S. 85 ; *Wells* v. *Yates*, 44 N. Y. 525 ; *Thomason* v. *Ins. Co.*, 92 Iowa, 72 ; *Southard* v. *Curley*, 134 N. Y. 148 ; *C. St. R. Co.* v. *T. T. St. R. Co.*, 149 N. Y. 51 ; *J. S. Bank* v. *Taylor*, 72 App. Div. 567.)  The provisions contained in the special contract, and which should have been contained in the policy, obligated the defendant company to pay the amount stated under the third option, in the event that the plaintiff perform the contract on his part and elected to exercise such option.  (*I. S. B. Co.* v. *Jewett*, 169 N. Y. 143 ; *Marshal* v. *C. T. M. A. Assn.*, 170 N. Y.

434; *Hoffman* v. *Æ. Ins. Co.,* 32 N. Y. 405; *Paul* v. *T. Ins. Co.,* 112 N. Y. 472, 479; *Wadsworth* v. *J., etc., Co.,* 132 N. Y. 540; *Coles* v. *N. Y. C. Co.,* 87 App. Div. 41.) The plaintiff was not guilty of laches in the institution of this action. (*Platt* v. *Platt,* 58 N. Y. 646; *Galliher* v. *Cadwell,* 145 U. S. 368; *N. Y. B. N. Co.* v. *H. B. N. Co.,* 28 App. Div. 411; *Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 328; *Simmons* v. *N. Y. L. Ins. Co.,* 38 Hun, 309; *N. Y. L. Ins. Co.* v. *Miller,* 56 S. W. Rep. 975.)

*Lincoln A. Groat* and *George H. Noyes* for respondent. The evidence in this case clearly establishes and fully sustains the facts found by the trial court and warrants the conclusion of law that the writing which was handed to the plaintiff by the soliciting agent Whitney on February 16, 1889, did not constitute a contract between the plaintiff and defendant, and the further conclusion of law that the only contract between the plaintiff and defendant is embodied in and fully covered by the policy of insurance delivered by the defendant to the plaintiff herein. (*De Grove* v. *H. Ins. Co.,* 61 N. Y. 594; *Tifft* v. *P. M. L. Ins. Co.,* 6 Lans. 198; *Ins. Co.* v. *Mowry,* 96 U. S. 544; *L. F. B. Mfg. Co.* v. *H. Ins. Co.,* 60 Fed. Rep. 351; *Morse* v. *St. P. Ins. Co.,* 21 Minn. 407; *W. Ins. Co.* v. *Holzgrafe,* 53 Ill. 516; *Stockton* v. *F. Ins. Co.,* 33 La. Ann. 577; *Chase* v. *H. Ins. Co.,* 22 Barb. 527; *Bartholomew* v. *M. Ins. Co.,* 25 Iowa, 507; *Armstrong* v. *S. Ins. Co.,* 61 Iowa, 212; *O'Brien* v. *N. Z. Ins. Co.,* 108 Cal. 227; *Fleming* v. *H. Ins. Co.,* 42 Wis. 616; *Heath* v. *S. Ins. Co.,* 58 N. H. 414; *Dryer* v. *S. F. Ins. Co.,* 94 Iowa, 471.) The only possible grounds upon which plaintiff could obtain the relief prayed for in the case at bar would have been through a reformation of the policy contract on the ground of fraud or mutual mistake. He made out, however, no state of facts upon which a reformation of the policy could have been granted to him. (*Jackson* v. *Andrews,* 59 N. Y. 244; *Husted* v. *Van Ness,* 158 N. Y. 104; *Story* v. *Conger,* 36 N. Y. 673; *Bryce* v. *L. F. Ins. Co.,* 55 N. Y. 240; *Paine* v. *Jones,* 75

N. Y. 593; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Lyman* v. *U. Ins. Co.*, 17 Johns. 373; *Avery* v. *E. L. Assur. Society*, 117 N. Y. 458; *C. S. R. R. Co.* v. *T. T. S. Ry. Co.*, 149 N. Y. 51; *Ford* v. *Joyce*, 78 N. Y. 618.) If plaintiff had originally any right to ask a court of equity to reform the policy in suit, he has lost it by his laches. (*Avery* v. *E. L. Assur. Society*, 117 N. Y. 451; *Madan* v. *Sherard*, 73 N. Y. 329; *Greene* v. *Smith*, 13 App. Div. 459; *Syms* v. *Mayor, etc.* 18 J. & S. 289.)

HISCOCK, J. This action is brought to reform a policy of insurance issued by the respondent to the appellant so as to make it conform to an alleged special contract for insurance issued to the appellant by the respondent's agent prior to said policy, and set forth in the foregoing statement of facts. The policy was issued on what was denominated the semi-tontine plan. In addition to providing for straight life insurance, it amongst other things gave the insured the right at the expiration of the tontine dividend period of fifteen years, to withdraw in cash the accumulated surplus apportioned by the company to the policy. It provided that such share in the surplus should be fixed according to the company's usage, and this meant that its amount would be contingent on the experience and profits of the company during such period of accumulation. The specific complaint against the policy is that it does thus make appellant's share in the surplus at the end of the tontine period which had arrived before this action was commenced, contingent and much less than the amount of such surplus as it is claimed it was guaranteed and fixed in said "special contract," and the particular reformation which appellant desires is that this contingency as to the amount of his share in the surplus shall be eliminated, and that the absolute sum claimed to be fixed by the "special contract" shall be incorporated into the policy.

The trial court found that there were no grounds entitling appellant to the relief sought by him, and this court agrees with that conclusion.

As appears, plaintiff's claim for relief rests on the "contract" delivered to him before the policy was issued. If that paper issued by respondent's agent was not binding on it as a final expression of the rights of the parties, or if it did not in fact guarantee and fix appellant's share in the surplus at a certain sum, or if after it was issued, whatever its original force and effect, appellant nullified it by applying for a policy of insurance such as he in fact received and kept for many years without any complaint, then this action cannot be maintained

This "special contract" was issued by one of respondent's agents in the course of negotiations between him and appellant relating to the latter's taking out life insurance. It is claimed by the respondent, and has been found in effect, that this paper was simply a statement designed to be explanatory of what appellant could secure from respondent in the way of life insurance and was not intended to be a contract, and that the agent had no authority to make any special contract of insurance. While to my mind it seems clear that this paper was simply part and parcel of a series of negotiations designed finally to lead up to the policy of insurance, and was not intended to be any final contract, still, inasmuch as it was prepared on a blank furnished by the company and had the heading "Special Contract," I shall assume that its issue by the agent was authorized, and that it was binding on the company according to its true force and meaning. This leads, *first*, to a consideration of the paper and to the determination whether it does guarantee a fixed sum in the surplus.

As has already been stated, the paper by its terms treated of insurance, "15 Payment Life; 15 Year semi-Tontine." This meant straight life insurance with a tontine feature, and under the latter, as provided by the paper, the insured at the termination of the accumulative period of fifteen years had the right to select any one of three options of settlement, of which only two are material. The first one entitled him to a "Reserve" of $21,215.70 and a "Surplus" figured at $25,810.80, which is the item in dispute. It was, however,

significantly stated in this paper, "Reserve guaranteed and amount stated in policy. Surplus guaranteed, *amount estimated*, based on past experience." The third option, which is the one appellant seeks to take advantage of, read, "Paid-up policy for $30,000.00 and cash $25,810.80, with annual dividend during life on the paid-up policy under 2nd and 3rd options." Thus it will be noted that while that option states the item of cash, and which constitutes the share in the surplus, simply at a fixed sum of $25,810.80, those figures are the same figures and constitute the same item which had already been referred to in the first option as the item of surplus and in which option it had been distinctly stated that while some surplus was guaranteed, the amount was "estimated, based on past experience." While it doubtless would have been more complete and perfect if in stating this third option and referring to the cash or tontine plan therein provided for it had again been stated that this sum was estimated and based on experience, still the identity of this sum with the surplus item of the same amount stated in the first option was obvious and as it had been stated in such first option that the sum was estimated there could be no misunderstanding of this fact when such item was again given in the third option. I think this is plain on the face of the paper and that appellant who is found to have understood the nature of a tontine policy and which as one of its underlying principles involves the uncertainty of a given share in the surplus until the end of a fixed period, never could have understood otherwise than that this amount was estimated and uncertain rather than definite and fixed. Certainly there is no opportunity for any actual doubt about this because the finding is and the evidence clearly shows that the agent discussed with him fully the nature of a tontine policy and made it clear that his share in any surplus was contingent on the experience and profits of the company during the accumulative period. Appellant was not unused to these questions for at this time he had already been carrying for years with this same respondent a policy which involved the tontine ele-

ment. This contract, it is true, also contained the clause, " the third.option will secure a paid-up policy for $30,000.00, which will draw large annual cash dividends together with $25,810.80 in cash," but what has already been said in reference to the prior statement in said paper of said third option applies to this clause.

Therefore, it seems to me that on this proposition the appellant did not establish his case ; that the contract did not on its face purport by guaranteeing a fixed amount of surplus to overthrow the very fundamental principle of tontine insurance that a policyholder at the end of his period should get a cash payment dependent on what had happened during that period to and concerning other associated policyholders, but rather expressed his share to be estimated and dependent on such contingencies, and, therefore, there was no variance between it and the policy in this respect.

But if we should view this paper otherwise, and should conclude that it apparently provided for a fixed share of surplus, of course appellant had the right in taking out his policy to treat the latter as his final contract and to waive or eliminate this fixed provision and accept the rights ordinarily given to the holder of a tontine policy, and this in my judgment is what he did do.

After this preliminary paper was delivered to him, as if in full appreciation that it still remained for him to deal directly with the company concerning his policy of insurance, he made a formal application in writing addressed to the company for such insurance. The court has found that " at the time he signed and delivered * * * his said application for insurance * * * he understood that he would, if his application for insurance * * * was approved by the defendant company, receive from it a written policy of insurance which in itself would embody and contain each and all of the terms and conditions of his contract for insurance with the defendant." This, of course, is obvious. It might almost be said as a matter of law that when the appellant made formal and complete application for a policy of insurance, he knew that if his

application resulted in anything it would be a policy defining his rights with the company. This application amongst other things enumerated the form of the policy which was to be issued. It described the kind of policy — "Amount $30,000.00. Kind 15 P. L. 15 Yr. S. T." These initials and abbreviations stood for the terms written out in full in the so-called "special contract," " Fifteen Payment Life and Fifteen Year semi-Tontine." He, therefore, knew that he was applying for a policy which involved the tontine principle. The court has found and the evidence shows that he fully understood that under the fundamental principles of tontine insurance his share of the surplus to be paid at the end of the accumulative period must be uncertain and fixed only by the experiences and profits of the company during that period. This was the natural and ordinary meaning of the policy which he described in his application. Any other feature in such policy such as the guaranty of some specific sum as is now claimed would not only be unusual but would be a violation of the very theory of the insurance which he was seeking. Certainly, if he was applying for such an unusual form of policy as he now claims to have been entitled to, he should have used appropriate terms. Under the specific provision in his application that "no statements, representations or information made. or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the Company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing, and presented to the officers of the Company at the Home Office in this application," ordinary prudence if not an absolute duty required that some reference should be made to his so-called "special contract " if relied upon as determinative of his rights and of the form of policy to which he was entitled, but none was ever made. In no form or manner did he say to the company to which he recognized he must apply, as he did, that he claimed to be entitled to a special provision concerning this item of surplus. Not having done this, but having made application for a policy

such as he accepted and retained and of the form of which he cannot under the circumstances plead ignorance (*Avery* v. *Equitable Life Assur. Socy.* 117 N. Y. 451, 459), he strongly confirms the respondent's claim that the so-called "special contract" was understood not to be more than a prospectus or preliminary statement, and he certainly deprives himself, as found by the court, of the right to plead that in receiving what he freely and voluntarily asked for as the binding expression of the relations between him and the insurance company he was deceived or misled because it did not conform to some prior instrument.

It may be regarded as a subject for adverse criticism that the company labeled as a "special contract" that which it now claims was only a prospectus or preliminary statement. Apparently the company was willing to appeal to the vanity and sense of thrift of each proposed customer by giving an appearance of "special" importance to what was as a matter of fact general and common to every one who desired it. This method of puffing doubtless is not to be commended, nor is it in all probability confined to sellers of life insurance. What may seem to us to be a violation of some rule of ethics, however, does not become a basis for equitable relief in such a case as this unless it has been made the means of some substantial fraud or deception, and that has not happened here. Appellant was not entirely inexperienced and unsophisticated in life insurance matters. He had had dealings with the respondent in connection with a prior similar policy, and, as already pointed out, he must be assumed to have understood that if he had obtained a preliminary contract guaranteeing at a fixed sum his share in the surplus, that contract was not in accordance with the general principles of tontine insurance nor in accordance with the policy for which he was making formal application.

Further, while appellant alleges that he was ignorant of the terms of his policy for eleven years after he had accepted it, and during which period he was paying upwards of $2,000 a year by way of premiums, it is conceded that at the expira-

tion of that period he learned fully of its terms and provisions, and knew that, on his present claims, he had been defrauded and was entitled to institute this action for the reformation of the policy. He did not, however, do this for nearly four years. Instead, he waited until the completion of the accumulative period had demonstrated what his share of the surplus would be on the contingent plan adopted by the company in its policy, and the thought quite forcibly intrudes itself on the mind that he had become sufficiently reconciled to the idea of tontine speculation so that he was willing at least to delay proper assertion of his legal rights until it should have become apparent whether the uncertain profits to which he might be entitled under the policy might not after all be greater and more advantageous for him than the fixed sum to which he claims to have been entitled under the so-called special contract, and it thus become undesirable to attempt to enforce the latter. In view of his apparent ability and willingness thus to take a comprehensive and practical survey of the situation and select therefrom a course designed to keep within his reach two contradictory theories of his rights for four years and until later events should show which was the more advantageous, it is difficult to believe that appellant was misled by any terms of flattering exaggeration into a misunderstanding of the real nature of the "special" contract or into believing that it survived the application for and receipt of a formal policy of insurance which, according to common knowledge, would set forth all of his rights in great detail. It is equally difficult to avoid recalling what was said in the *Avery Case (supra)* under somewhat similar circumstances: "The fact of the acceptance and retention of the policy during that period of time, (the fifteen-year accumulative period) without taking any steps for a reformation, deprives the case of equitable features and seriously assails the good faith of the plaintiff in (his) her present attempt to charge the defendant with a liability, inconsistent with the terms of its contract." (p. 461).

The judgment should be affirmed, with costs.

· CULLEN, Ch. J. (dissenting).   I dissent from the decision about to be made, deeming the judgments below to be erroneous for the following reasons :

1. If the so-called special contract was in fact a contract there can be no doubt as to the agent's power to enter into a contract with the plaintiff in accordance with its terms.   The instrument was a printed form given by the defendant to its agents for delivery to persons soliciting insurance, the only blanks being the name of the person to whom it was to be delivered, the amount of insurance sought and the amounts payable under the options mentioned in the instrument.   At the end was printed the defendant's name with a blank for the name of the particular agent who might execute it.   In this case the agent did nothing except that which the defendant expressly authorized him to do by furnishing him the blank form.   The finding of lack of authority on the part of the agent was, therefore, erroneous.

2. The character of the instrument.   On its face the instrument purports not only to be a contract but a special contract with a particular individual.   If the defendant intended the paper as a mere prospectus it should have been so denominated, but to call it a contract if not intended as such was to practice deception and a fraud on those with whom the defendant's agents might deal.   The form of the instrument, leaving a blank to be signed by the particular agent who might deliver it, also tended to show that the instrument was one imposing obligations on the defendant. Besides this, though the blank form was printed it was printed to imitate typewriting, thus conveying to any one who might negotiate with the defendant's agents the belief that this, so far from being a general prospectus, was an exceptional contract especially prepared for him.   To allow the defendant to now repudiate its character would permit it to profit by its own fraud.   When the plaintiff accepted this instrument and delivered to the agent the premium a valid contract between the parties was created subject to the implied qualification that the plaintiff should satisfactorily

pass the medical examination. The plaintiff would not be at liberty to recall the premium without the consent of the defendant and, equally, the defendant was obliged to issue insurance to him on the conditions specified in the written contract. Such preliminary agreements for insurance are valid and enforceable. (*Train* v. *Holland Purchase Ins. Co.*, 62 N. Y. 598.)

3. *Construction of the contract.* The contract was prepared by the defendant and it is elementary law that it should be construed most favorably to the other party. This has been so frequently declared, especially in the case of insurance policies, that a citation of authorities is unnecessary. If we suppose that "Tontine" as applied to life insurance has acquired a definite meaning of such common knowledge that every one taking out insurance is bound to understand its import, it is very certain that the same is not at all true of "semi-Tontine." Tontine as defined by the dictionaries is an annuity of survivorship where the ultimate survivor takes the whole. Of course, this definition cannot apply in full force to insurance, but by its use there is naturally to be implied that survivorship till the end of the tontine period secures advantages. In such case the extent of the advantage secured by a survivorship would be contingent and problematical. The agreement, however, was not for a tontine policy, but for a semi-tontine policy, and a semi-tontine policy the one before us certainly is not, whether the contract be construed in accordance with the defendant's claim or with that of the plaintiff. Three options were reserved by the contract. Under the first the amount payable to the plaintiff was contingent; under the second the amount of the insurance to be issued absolute; the third is the subject of the controversy. Therefore, in reality, the only question in this case is whether the policy promised was one-third tontine or two-thirds tontine, and the plaintiff's construction approximates just as closely to a semi-tontine policy as does that of the defendant. But there are considerations much more controlling than refined distinctions as to the definition of

terms. The statement "Surplus guaranteed, amount estimated, based on past experience," is not made applicable to the whole series of options but only to the first, while as to the third the contract concludes : "The third option will secure a paid-up policy for $30,000, which will draw large annual cash dividends, together with $25,810.80 in cash." It is difficult to imagine a more positive affirmation excluding all contingency than that which has been quoted, and it is the settled law that the use of even legal expressions in a policy may be controlled and overcome by the use of inconsistent provisions. (*Fitch* v. *Am. Pop. Life Ins. Co.*, 59 N. Y. 557.) Contrasted with the prospectus in the case of *Avery* v. *Equitable Life Assurance Society* (117 N. Y. 451) that instrument and the one now before us are as far asunder as the poles. That in the *Avery* case was headed in large type "Tontine Savings Fund" followed immediately over the body of the instrument by the words "Estimated results." The provisions of the prospectus equally clearly show that all the insured would be entitled to at the expiration of the tontine policy was his share of the surplus, not any definite sum. That prospectus may have been optimistic, but it was honest. The same cannot be said of the instrument before us unless the obligation to pay a sum certain was absolute. The suggestion that the plaintiff's claim in some manner infringes upon or impairs the rights of others who may have been insured in his class may be summarily disposed of. The relation between the company and an insured under this form of policy is not that of a trustee and *cestui que trust,* but merely of debtor and creditor. (*Uhlman* v. *N. Y. Life Ins. Co.*, 109 N. Y. 421.) What I have said equally answers the claim, that by the form of the plaintiff's application and the character of the policy he sought, he disposed of his rights under the special contract.

Lastly we are brought to the question of laches or waiver. It is sufficient to say that the trial court made no finding on these matters. Under the circumstances of this case, bearing in mind that the plaintiff had an absolute contract controlling

the terms of any policy that might be issued to him, whether he was guilty of laches in failing to examine the terms of his policy was a question of fact in the determination of which conflicting inferences might be drawn.   In such case it is settled that this court cannot make findings on conflicting evidence to support a judgment on a theory upon which it was not decided in the courts below (*Armstrong* v. *Du Bois,* 90 N. Y. 95; *Clemans* v. *Supreme Assembly,* 131 N. Y. 485; *Hollister* v. *Mott,* 132 N. Y. 18), especially now that by constitutional limitations our power is restricted to the determination of questions of law.

I cannot but believe that when the defendant effected this insurance it expected to faithfully live up to its contract, believing that past experience warranted it in entering into unqualified obligations as to the amount payable to the insured, and that, as unfortunately too often occurs, finding that the expectations of the past had not been realized in the present, under stress of supposed necessity it has claimed an interpretation of its contract that under more favorable circumstances it never would have advanced.   If, however, I am wrong in giving the defendant credit for original integrity of intention, then I must say that its conduct in effecting this insurance, the various devices and false statements it has adopted to entrap the insured, are inconsistent with honesty to such a degree as to contravene not merely ethical standards but legal obligations.

Werner, Willard Bartlett and Chase, JJ., concur with Hiscock, J.; Haight, J., concurs with Cullen, Ch. J.

Judgment affirmed, with costs.