## COMMISSIONER OF INTERNAL REVENUE v. WESTERN UNION LIFE INS. CO.

### No. 6762.

Circuit Court of Appeals, Ninth Circuit.

Sept. 26, 1932.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and T. M. Mather, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Graves, Kizer & Graves, of Spokane, Wash., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

Respondent is a life insurance company organized under the laws of the state of Washington. One form of policy written by respondent contains provisions whereby additional benefits are given by means of several interest bearing coupons attached to and made a part of the policy. The first coupon matures at the end of the first year after the policy is written, the second coupon at the end of the second year, and so on; the amounts increasing annually. These coupons are absolute undertakings to pay stated sums on or after certain dates, provided all premiums due are paid. The coupons may be used for different purposes, namely, cashed, used in the reduction of the annual premium, used for the purchase of additional insurance, left to accumulate with the company at interest compounded annually, or used to acquire an annuity.

In its tax returns for the years 1924, 1925, and 1926, the taxpayer deducted from its gross income 4 per cent. of the mean of the reserve fund it was required by law to maintain to meet mortality obligations, claiming that it was entitled, under the provisions of section 245 (a) (2) of the Revenue Acts of 1924 and 1926, 26 USCA § 1004 (a) (2), to make such deductions for the purpose of establishing a reserve or increasing its legal reserve to meet the ultimate redemption of the coupons attached to its coupon policies. The amounts so deducted are $22,018.87, $23,485.91, and $24,365.90 for the years 1924, 1925, and 1926, respectively. These deductions were disallowed by the Commissioner of Internal Revenue and deficiency taxes of $4,923.46, $5,517.32, and $2,938.86 for the respective years in question were assessed. The Board of Tax Appeals reversed the determination of the Commissioner and held: "That the coupons and the guaranteed options of the policies constituted an absolute policy obligation and that the amount of the reserve which the company was required to hold for the pay-ment of the unsurrendered coupons and interest, and the policy obligations thereon, were a part of the reserve funds of the taxpayer upon which it was entitled to compute the deductions from gross income permitted under section 245 (a) (2) of the Revenue Acts of 1921, 1924 and 1926."

This appeal is from the decision of the board.

The policies in question, known as "guaranteed income bond" policies, contain the following:

"Guaranteed Premium Reduction Coupons. This policy is issued on the guaranteed premium reduction, non-participating plan, and if kept in force by payment of premiums in cash, the company guarantees that the amounts payable hereunder shall be as entered on the coupons shown hereon.

"If the insured shall elect to pay all premiums in full, without reduction, and leave with the company the amounts represented by the coupons on this policy, the company guarantees that this policy will, upon the written request of the insured hereunder at that time, be fully paid-up after paying the premiums in cash for fifteen full years and delivering all attached coupons to the company.

"In case the insured shall elect to leave the coupons to make this a fully paid-up policy in fifteen years and die while this policy is in force, but before it is fully paid-up as above provided, all of the coupons bearing date prior to said death shall be paid to the beneficiary with compound interest at the rate of 3½ per cent per annum in addition to the sum insured.

"In case the insured shall not elect as above provided, but shall, nevertheless, leave said coupons with the company, the same shall be payable, on presentation, at any time, with compound interest at the rate of 3½ per cent per annum for each full year such coupons are left with the company."

The following is a typical coupon:

### INCOME COUPON

No. 1.  On or at any time after  5%
............19..

WESTERN UNION LIFE INSURANCE COMPANY,

Spokane, Washington.

Will pay to the order of the insured under Policy No. .......... (or to the order of the assignee, if said policy is assigned)

$...................

with interest at the rate of 3½ per cent per annum for each full year from maturity, compounded annually, Provided all premiums on said Policy up to and including said date have been paid.

■ Petitioner contends that the sums set aside by respondent to meet the coupon provisions of its insurance policies do not constitute such a reserve as is contemplated by the Revenue Act, because the coupons in question are definite, absolute obligations to pay money, and not contingent obligations, and the only reserve which is deductible from gross income under the act is a reserve to meet contingent liabilities.

The Board of Tax Appeals in reversing the decision of petitioner in disallowing the deductions claimed by respondent based its ruling upon a prior decision of the Board in the case of Reserve Loan Life Ins. Co., 18 B. T. A. 359, in which case a similar question was presented, and on the case of Standard Life Ins. Co., 13 B. T. A. 13. The latter case was appealed to the Circuit Court of Appeals for the Third Circuit and affirmed. Commissioner v. Standard Life Ins. Co., 47 F.(2d) 218, 219.

In the case last cited the court said: "These coupon policies are in substance and in obligation the common form of life policies made more attractive to intended insurers, in that the substitution of a coupon for the ordinary yearly statement of accretions to the policy, whether the company chose to issue a coupon or gave a statement of amount, in no way lessened the obligation to ultimately and in some way pay such amount as part of the policy or keep in reserve a proper sum to ensure its payment."

Section 245 of the Revenue Act provides that in the case of a life insurance company there may be deducted from its gross income, in order to ascertain the taxable net income, a stated percentage "of the mean of the reserve funds required by law and held at the beginning and end of the taxable year. * * * "

The regulations of the Department thus define the term "reserve funds": " * * * The reserve deduction is based upon the reserves required by express statutory provisions or by the rules and regulations of the State insurance departments when promulgated in the exercise of a power conferred by statute. * * * " Regulations 65, art. 681.

The insurance laws of Washington require that: "The commissioner shall annually make valuation of all outstanding policies, additions thereto, unpaid dividends, and all other obligations of every life insurance company doing business in this state; and all such valuations made by him or his authority shall be according to the standard of valuation adopted by the company. * * * " Remington's Compiled Statutes, § 7137.

The statute requires the insurance commissioner to value outstanding policies. This is equivalent to a requirement that he determine the reserves on such policies, for when the value of a policy is ascertained the proper amount of the reserve on it is also ascertained.

Speaking of the reserve which insurance companies are customarily required to maintain, Corpus Juris, says: " * * * It constitutes, if the company is well managed, the equitable value of the policy, the 'net value' of a policy being but another name for 'reserve.' The legal reserve required to be maintained is ascertained upon rules laid down by the statute, and can always be determined with mathematical precision, factors to be considered for its computation being a valuation of the assets of the corporation, the nature and extent of its outstanding policies, a specified experience table of mortality, and a stated rate of interest. The directors and officers of the company have no discretion to exercise concerning the reserve." 37 C. J. p. 368, § 18.

In Millar v. Western Union Life Ins. Co., 106 Wash. 490, 180 P. 488, the court held that these coupons were mere incidents of the policy and were available only in the manner and for the purpose specified by the policy and could not be treated as independent obligations to pay money.

In support of the contention of petitioner that "the sums constituting the account 'coupons left with the company to accumulate interest thereon' were not 'reserve funds required by law' within the meaning of section 245 (a) (2) of the Revenue Acts of 1924 and 1926," counsel cite the following cases: McCoach v. Ins. Co. of North America, 244 U. S. 585, 37 S. Ct. 709, 711, 61 L. Ed. 1333; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 158, 64 L. Ed. 297; United States v. Boston Ins. Co., 269 U. S. 197, 46 S. Ct. 97, 70 L. Ed. 232; New York Life Ins. Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 438, 70 L. Ed. 859; and Duffy v. Mutual Benefit Co., 272 U. S. 613, 47 S. Ct. 205, 71 L. Ed. 439.

In none of the cases cited was the precise

question involved in the instant case presented for determination. Only the last two cases cited dealt with life insurance companies. It is contended, however, that from these decisions it "seems established * * * that the reserve as to which the Revenue Acts allow a deduction is only that which is set up to meet a contingent obligation."

The expression relied upon in the Mc-Coach Case, which arose under the corporation excise tax act of 1909, reads: "* * * that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies."

In the Maryland Casualty Company Case the Court said: "While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—'reserved'—as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment."

From the excerpt last quoted it appears that the court distinctly recognized that the scope of the term "reserve" "varies under different laws," but in general is conclusive of "claims accrued but contingent and indefinite as to amount or time of payment." Even if limited to the rule applied in casualty insurance, it is not clearly apparent why the obligation upon the coupons attached to the policies issued by respondent may not be regarded as contingent and indefinite as to amount and time of payment. While subject to payment on demand, that is only one of the several options of the insured. They may be allowed to remain with the company at interest until the policy matures. Unless the insured required the money in advance of the maturity of the policy, ordinarily it would be allowed to accumulate and be paid when the policy is paid. In this respect the options in reference to the coupons are not materially different from the right of a policyholder to exercise his privilege to borrow from the company any portion of the loan value of his policy. A life insurance company is bound to meet its obligations under any of the conditions of its policies, one of which in the instant case is liability on the policy coupons, which may be left to accumulate and be paid at maturity.

In the case of New York Life Ins. Co. v. Edwards, one of the two life insurance com-pany cases cited, supra, the Supreme Court, in refusing to allow a deduction of a reserve set up to meet unreported losses, said: "The item under consideration represented a liability and not something reserved from premiums to meet policy obligations at maturity."

In considering the weight to be given expressions appearing in opinions in the several cases cited on behalf of petitioner as applicable to the question presented in this case, it is well to bear in mind that: "It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration. Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257." Bramwell v. U. S. Fidelity Co., 269 U. S. 483, 489, 46 S. Ct. 176, 177, 70 L. Ed. 368.

The decision of the Board of Tax Appeals is affirmed.