## NATIONAL FIDELITY LIFE INS. CO. v. UNITED STATES.

No. 8544.

District Court, W. D. Missouri, W. D.

May 5, 1933.

Morrison, Nugent, Wylder & Berger, of Kansas City, Mo., for plaintiff.

William L. Vandventer, U. S. Atty., and A. B. Lovan, Asst. U. S. Atty., both of Kansas City, Mo.

OTIS, District Judge.

Plaintiff, a stock life insurance company, brings this action to recover from the defendant an amount alleged to have been erroneously assessed and collected from it as income taxes for the year 1926. The controversy concerns the construction and application of section 245 of the Revenue Act of 1926 (44 Stat. 9, 47, 26 USCA § 1004 (a) (1, 2). That section, so far as it is involved here, is:

Section 245 (a). "In the case of a life insurance company the term 'net income' means the gross income less—

"(1) The amount of interest received during the taxable year which under paragraph (4) of subdivision (b) of section 954 [213] of this title is exempt from taxation under this chapter;

"(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year. * * * "

Full findings of fact will be made and filed with this opinion. A brief statement is sufficient now.

Among other types of policies issued by the plaintiff were two, commonly known as "ordinary life" and "twenty-pay life" insurance policies to which coupons (nineteen in number, one maturing at each anniversary date of the policy) were attached. These coupons obligated the insurer to pay to the insured specific amounts of money. The premium rate on these policies was higher than on others; the additional premium being the consideration for this additional policy feature. To meet the obligations of these coupons at their maturities the plaintiff set up and maintained a reserve fund.

In the calculation of plaintiff's net income for 1926 the Commissioner of Internal Revenue denied the contention of the plaintiff that this reserve (that is, the reserve for the coupon obligations) was such as was "required by law" within the meaning of section 245 (a) (2), and refused to consider it in determining the deduction from gross income to which the plaintiff was entitled under that section. Whether the Commissioner was right in this conclusion is the principal question in the case.

As I have said, the plaintiff did set up and maintain a reserve on account of its coupon obligations. There are then but two possible issues to be resolved. The first is, Was this reserve required by the laws of Missouri?

If this question is answered in the affirmative, then the second question is, Was this requirement of law such a requirement as is within the meaning of section 245?

■ 1. It is first to be determined whether Missouri law requires of life insurance companies that they set up and maintain any reserve funds to meet thereafter maturing obligations. That there is such a requirement appeared to be conceded by counsel for the defendant at the trial and in the argument of the case, but I have been unable to find in the Missouri law any such requirement. If it exists at all (so much counsel for plaintiff concedes frankly), it is in what in 1926 was section 6131 of the Revised Statutes of Missouri for 1919, now section 5720, Revised Statutes for 1929 (Mo. St. Ann. § 5720). So much of that section as furnishes any basis whatsoever for the alleged requirement is as follows: "It shall be the duty of the superintendent [that is, the superintendent of the department of insurance] to make, or cause to be made, annually, a valuation of the policies, additions thereto, annuities and all other obligations of assurance outstanding and in force on the thirty-first day of December next preceding, of every life insurance company doing business in this state. * * * If, upon a valuation at any time by the insurance department of the policy obligations of any company organized under the laws of this state * * * it shall appear that the assets of the company do not exceed its liabilities, exclusive of paid-up capital, it shall be considered that its further proceedings are hazardous to the public, and the superintendent may take against such company the action prescribed by law in case of insolvent companies, or companies in a hazardous condition * * * no company organized under the laws of this state shall make any bonus dividend, or distribution of surplus to policyholders, unless such company shall be possessed of assets equal in amount to its liabilities, except capital, including a reinsurance reserve on all its policy obligations. * * * "

Considering the language of this statute and taking that language in its usual and ordinary meaning, I cannot see in it any requirement whatever that a life insurance company shall maintain a reserve in the form of securities, or otherwise. The statute does no more than to direct the superintendent to determine by examination and valuation the assets and liabilities of companies, to take steps against those which appear, as a result of such examination and valuation, to be in-

solvent, and to prohibit any company paying out a bonus dividend and distributing surplus to policyholders unless it has assets equal in amount to its liabilities. To read into this statute a requirement that insurance companies shall maintain a reserve to meet their maturing obligations would be an extreme example of judicial legislation.

The contrast between the Missouri statute and statutes of those states which do require maintenance of reserves by insurance companies is quite apparent when those statutes are read. Thus a statute in Pennsylvania (considered in the case of Standard Life Insurance Co. v. Commissioner, 13 B. T. A. 13, one of the cases relied on by the plaintiff), after providing that the insurance commissioner shall compute the reserve liability of every company doing business in Pennsylvania, contains this express provision: "The aggregate net value so ascertained of the policies of any such life insurance company shall be deemed its reserve liability, to provide for which it shall hold funds in secure investments of an amount equal to such net value above all its other liabilities. The Insurance Commissioner shall, after having determined as above the net value of all the policies in force, see that the company has that amount in safe legal securities, after all its other debts and claims against it have been provided for. * * * " See 40 PS § 71.

Again, the Indiana statute (referred to in Reserve Loan Life Insurance Company v. Commissioner, 18 B. T. A. 359, another of the cases relied on by the plaintiff), after providing for determination by proper state authority of a valuation of the policies of an insurance company, contains this express provision: "The auditor of state shall notify said company of the amount thereof, and within sixty days after the date of such notification, the officers of such company shall deposit with the auditor of state, for the security and benefit of all its policy holders, an amount, which together with the sum already deposited with said officer and such additional sums as may be deposited by said company with other states or governments pursuant to the requirements of the laws of such other states or governments in which said company is doing business, shall not be less than the amount of such ascertained valuation of all policies in force, in the securities * * * or in certificates of deposit. * * * " Burns' Ann. St. 1914, § 4687.

In Commissioner v. Western Union Life Insurance Co., 61 F.(2d) 207, 209, the Ninth Circuit Court of Appeals, referring to a valuation statute of the state of Washington somewhat similar to section 5720, R. S. Mo. 1929, says of it: "The statute requires the insurance commissioner to value outstanding policies. This is equivalent to a requirement that he determine the reserves on such policies, for when the value of a policy is ascertained the proper amount of the reserve on it is also ascertained."

The Court of Appeals apparently assumes, but without discussion, that a requirement that the insurance commissioner shall ascertain what should be the proper amount of reserves is equivalent to a requirement that the insurance company shall maintain such reserves. I think that is a nonsequitur.

It is possible, of course, that the superintendent of insurance of Missouri has issued regulations requiring of insurance companies maintenance of reserves. No such regulations have been called to my attention. Moreover, I do not find anywhere in the Missouri statutes that any authority has been vested in the superintendent of insurance to issue regulations having the force and effect of law.

On this branch of the case my conclusion is that plaintiff was not required by Missouri law to maintain any reserves, and since there is no showing in the record here as to what other states plaintiff does business in and to whose laws it is subjected, I cannot conclude that it is required by law to maintain reserves. Therefore, it is not entitled to have considered, in arriving at its net income, reserves maintained by it in connection with its coupon obligations.

2. If I had reached the conclusion that Missouri law or any law governing the plaintiff required it to maintain reserves in connection with its coupon obligations, then I would have resolved the second question (whether that was a requirement of law within the meaning of section 245) in favor of the plaintiff. The decisions are one way upon that subject. Commissioner v. Western Union Life Insurance Co. (C. C. A. 9) 61 F.(2d) 207; Commissioner v. Standard Life Insurance Co. (C. C. A. 3) 47 F.(2d) 218; Reserve Loan Life Insurance Co. v. Commissioner, 18 B. T. A. 359; Standard Life Insurance Co. v. Commissioner, 13 B. T. A. 13. By far the best-reasoned of these cases, containing the fullest discussion of the subject, is the last-mentioned case. Nothing that I can say can add anything to the reasoning and discussion of the Board of Tax Appeals in that case. I call attention again, however, to the fact that all of these cases, with the exception of the first mentioned, involved state statutes ex-

pressly and positively requiring the maintenance of reserves.

3. What I have said concerns the principal of the questions in this case. There is another independent controversy between the parties. It also involves the construction and application of section 245.

A Missouri statute, section 5717, R. S. Mo. 1929 (Mo. St. Ann. § 5717), in 1926 it was section 6128, R. S. Mo. 1919, provides that: "No existing company [that is, life insurance company] organized under any general or special law of this state, and transacting business * * * shall commence, continue or carry on business until such company has transferred to and deposited with the superintendent of the insurance department, for the security of its policyholders, the sum of one hundred thousand dollars in notes or bonds. * * *"

This plaintiff deposited $100,000 with the superintendent of insurance as required by section 5717. It contends that this amount is a reserve required of it by law within the meaning of section 245 which should have been taken into consideration in the calculation of its net income. The Commissioner ruled otherwise.

The only decisions which have any bearing on this question support the Commissioner. Midland National Life Insurance Co. v. Commissioner, 14 B. T. A. 200; Kaskaskia Life Insurance Co. v. Commissioner, 22 B. T. A. 210. Learned counsel for the plaintiff does not press his contention in this connection, and I do not consider it further. I agree with the reasoning and conclusion in the cases cited.

The judgment in this case should be for the defendant. A form of judgment may be submitted for approval and entry.