## DUFFY, FORMER COLLECTOR, v. MUTUAL BENEFIT LIFE INSURANCE COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 108.  Argued October 21, 22, 1926.—Decided November 29, 1926.

1. The legal reserve of a mutual life insurance company, consisting of premiums paid by the members, and earnings upon premiums invested, is " invested capital," within the war excess profits tax

provisions of the Revenue Act of 1917, which (§ 207(a),) define invested capital, in the case of a corporation or partnership, as "(1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares of such corporation or partnership . . . and (3) paid in or earned surplus and undivided profits used or employed in the business," etc.    P. 617.

2. A legal reserve so constituted, and used for the double purpose of security and investment, is not a liability, though carried as such on the books, but is assets of the company.    P. 618.

3. Until the maturity of a policy, the policy holder is simply a member of the corporation, with a relation to it analogous to that of a stockholder to a joint stock company: upon the maturity of the policy he becomes a creditor with an enforceable right.    P. 618.

4. Assuming that in § 207(a), *supra,* the words " actual cash paid in " are qualified by the clause " for stock or shares in such corporation or partnership," the premiums paid by the policy holders of a mutual life insurance company, are cash paid for " shares " in the corporation.    P. 619.

3 F. (2d) 1020, affirmed.

CERTIORARI (268 U. S. 686) to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court (295 Fed. 881) against Duffy, Collector of Internal Revenue, in an action by the Insurance Company to recover the amount of an additional income tax assessment, which had been paid by the Company under protest.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Newton K. Fox,* Attorney in the Bureau of Internal Revenue, were on the brief, for the petitioner.

*Mr. Charles E. Hughes,* with whom *Messrs. John O. H. Pitney, John R. Hardin, Shelton Pitney,* and *John F. Caskey* were on the brief, for the respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This case arises under the Revenue Act of 1917, c. 63, 40 Stat. 300, 302–306, imposing upon every corporation,

partnership and individual a war excess profits tax. The pertinent provisions of the Act are as follows:

" Sec. 201. That in addition to the taxes under existing law and under this act there shall be levied, assessed, collected, and paid for each taxable year upon the income of every corporation, partnership, or individual, a tax (hereinafter in this title referred to as the tax) equal to the following percentages of the net income:

" Twenty per centum of the amount of the net income in excess of the deduction (determined as hereinafter provided) and not in excess of fifteen per centum of the invested capital for the taxable year; . . .

" Sec. 203. That for the purposes of this title the deduction shall be as follows, except as otherwise in this title provided—

"(a) In the case of a domestic corporation, the sum of (1) an amount equal to the same percentage of the invested capital for the taxable year which the average amount of the annual net income of the trade or business during the prewar period was of the invested capital for the prewar period (but not less than seven or more than nine per centum of the invested capital for the taxable year), and (2) $3,000; . . .

" Sec. 207. That as used in this title, the term ' invested capital ' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title ' invested capital ' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title, nor money or other property borrowed, and means, subject to the above limitations:

" (a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible

property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: . . ."

By § 200 it is provided that the term " corporation " includes joint-stock companies or associations and insurance companies, and we assume that this includes non-stock mutual insurance companies as well as those having capital stock.

Respondent is a mutual company having no capital stock; and its policyholders constitute its members. Its business has always been conducted upon the "level premium plan," under which the estimated annual cost of the insurance is averaged and the maximum annual contribution of each member is uniform throughout the life of the policy. The annual contributions during the early years of the policy are in excess of the natural premiums, and such excess premiums, augmented by interest thereon, are held as a reserve to maintain the insurance in the later years. These contributions (or premiums), together with the increment derived from their investment, constitute the sole assets of the company. A more complete statement of the plan will be found in the opinion of the district court in this case, 295 Fed. 881, and cases cited in that opinion at p. 883.

The company is required by state laws, as a condition of continuing business, to maintain its assets at a sum not less than the amount of the " legal reserve " required by such laws. For the year 1917 the legal reserve amounted

to something over $186,000,000. In addition to the legal reserve, the company maintained a second or " contingent reserve " as a margin of safety to meet contingencies. The two reserves are not segregated in any way or separately identified or invested. The funds therein, constituting the company's entire assets, are invested in its office building and in government bonds and other securities. The income resulting from the investments is returned for federal taxation and is taxed. For the year 1917 the sum of the two reserves was returned by the company as invested capital for that taxable year. The net income shown for the year was $1,808,339.33, upon which the company paid an income tax of $108,500.36, but no excess profits tax. The Commissioner of Internal Revenue amended the returns and, thereupon, levied an additional assessment against the company amounting to $83,779.70. This was accomplished, so far as necessary to be now considered, by deducting from the amount of invested capital as returned the sum of $186,258,796,· being the exact amount of the legal reserve, and reducing the company's invested capital for the year to the sum of $14,719,043.76. It is agreed that if, instead of this latter sum, the company's invested capital had been computed at any sum in excess of $25,500,000, no war excess profits tax would have been due.

The company paid the amount of the additional assessment under protest and brought this action to recover it. The collector moved to strike out the complaint as insufficient in law. It was stipulated that the decision on the motion should be a final disposition of the controversy. The district court denied the motion and rendered judgment for the full amount, with interest. 295 Fed. 881. This judgment was affirmed by the circuit court of appeals. 3 F. (2d) 1020.

The question for determination is whether the funds constituting the legal reserve, or sufficient thereof to make

up as much as $25,500,000 when added to the amount allowed by the commissioner, is invested capital within the meaning of § 207 (a) of the Revenue Act. The contention of the collector is that under subdivisions (1) and (2), § 207 (a), invested capital must be either cash or tangible property paid in for stock or shares of the corporation, and inasmuch as the company has no capital represented by stock or shares, its legal reserve is not invested capital within the meaning of those subdivisions; that the legal reserve is not surplus or undivided profits within the meaning of subdivision (3), because it is no more than the equivalent of the obligations of the company at the time under its policies of insurance. It is contended that the legal reserve represents a present existing liability; and stress is put upon the fact that it is carried by the company on the liability side of its ledger.

It appears from the complaint that the company has been in business since the year 1845. During that time the amount of its assets has increased, year by year, from about $20,000 in 1846 to over $200,000,000 in 1917, divided between the legal reserve and the contingent reserve, as already stated. The legal reserve includes $70,000,000 premiums theretofore paid and $116,000,000 earnings upon investments. The legal reserve, therefore, constitutes assets of a very permanent character. Originally consisting of the contributions of members only, the earnings now make up considerably more than one-half of the whole. The contributions were made for, and have been used to serve, the double purpose of protection and of investment. These assets, thus constituted, have never represented indebtedness any more than the capital of a stock corporation subscribed by its stockholders represents indebtedness. Until the maturity of a policy, the policyholder is simply a member of the corporation, with no present enforceable right against the assets. Upon the

maturity of the policy he becomes a creditor with an enforceable right. Then for the first time there is an indebtedness. See *Mayer* v. *Attorney General*, 32 N. J. Eq. 815, 820–822. In the meantime, each member bears a relation to the mutual company analogous to that which a stockholder bears to the joint-stock company in which he holds stock. In either case, the title to the assets is in the corporation and not in the members or stockholders.

True, the amount of the reserve is carried on the books as a liability, but only as the capital stock of a stock corporation is carried on its books as a liability. In both instances, it is a form of bookkeeping to balance assets, which in the one case are contributed by the members, and in the other by the stockholders. If § 207 (a) subdivisions (1) and (2) had defined invested capital as "actual cash paid in," without more, it probably would not be doubted that the part of the legal reserve derived from premiums would be included. The doubt results from the use of the additional words " for stock or shares in such corporation or partnership." The collector says these words qualify the phrase "(1) actual cash paid in " as well as the phrase which they immediately follow, "(2) the actual cash value of tangible property paid in." For present purposes we shall assume this to be so—although there is a plausible argument on the other side to the contrary—and consider the case accordingly. The mutual company is not a stock company, and the word " stock " may be put aside as having no application to it. It is clear that since the word " stock " does not describe interests in partnerships, included expressly along with corporations in the same paragraph, the word " shares " must be held to do so. And if that word is broad enough to include partnership interests, it is broad enough to include the interests held by members in non-stock corporations.

To hold the contrary would be to so limit the application of subdivisions (1) and (2) of § 207 (a) as altogether to exclude therefrom those corporations which have no capital stock. We cannot suppose that Congress intended such a result; but must conclude that it used the word " stock " as appropriate in the case of stock corporations and the word " shares " as appropriate in the case of partnerships and non-stock corporations. Such an interpretation does no violence to the ordinary meaning of the word, for while it is entirely proper to speak of " stock " as " shares " it is equally proper to designate the several interests in a common fund as " shares." To the extent of $70,000,000 the legal reserve consisted of " actual cash paid in " by the members. These payments were intended for investment, and were invested, to increase the resources of the company and thereby reduce the cost of the insurance; and it requires no stretch of the realities to say that, within the meaning of subdivisions (1) and (2), § 207 (a), the fund which they created is invested capital. This is enough to relieve the company from the payment of any war excess profits tax, and it is unnecessary to inquire whether the remaining $116,000,000 is to be regarded as earned surplus under subdivision (3).

*Judgment affirmed.*