## ATLANTIC LIFE INS. CO. v. MONCURE.

District Court, E. D. Virginia, at Richmond.
October 7, 1929.

A. D. Christian, of Richmond, Va., for plaintiff.

Paul W. Kear, U. S. Atty., of Norfolk, Va., C. M. Charest, Gen. Counsel, and E. H. Horton, Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

GRONER, District Judge. Plaintiff in this action seeks recovery of excess profits taxes assessed and collected for the calendar year 1917 in the sum of $15,882.44, under the provisions of the Revenue Act of October 3, 1917 (40 Stat. 300), on the ground that its legal reserve as of December 31, 1916, constituted invested capital as that term is defined by Congress in section 207 of said Revenue Act of 1917, and that the amount of said legal reserve was erroneously excluded from plaintiff's invested capital by the Commissioner of Internal Revenue in computing plaintiff's excess profits tax for said calendar year 1917.

The facts in the case have been stipulated, but, condensed and epitomized, may be stated as follows:

Plaintiff is a capital stock life insurance corporation, organized and existing under, and subject to, the laws of the state of Virginia.

Plaintiff has always conducted its business on the "level premium plan."

Under the "level premium plan," the estimated annual cost of insurance of a given life, for a given amount, on a given plan, is averaged, and the maximum annual premium which the insured person can be called upon to pay is uniform throughout the life of the contract. The insured person pays annually during the early years of the policy a sum in excess of the cost of carrying the insurance for these years. But the cost increases from year to year, and this is provided for out of this excess, plus interest on the same, and this accumulation is held by the company as a *reserve fund*, which maintains the insurance in later years, when the stipulated premium would otherwise be insufficient to meet the cost of the insurance.

Plaintiff's business has always been conducted by the board of directors elected by the stockholders, and by officers elected by the board. The rate of dividend payable to the stockholders is not limited by the company's charter or by-laws, but no dividends were declared or paid from the organization of the company through the year 1917.

Plaintiff in the conduct of its business issues participating and nonparticipating insurance contracts, containing tables of surrender values and provisions for "automatic nonforfeiture," "paid-up insurance," "cash value," "extended term insurance," and "loan value." Of its total outstanding insurance policies, more than five-sixths are what are known as "participating" policies.

The laws of the state of Virginia require a company like the plaintiff to set aside each year out of the amounts of cash paid in by its policy holders, and out of the earnings on its invested assets, proper sums, designated "reserves," to enable it to be in funds to pay the amounts due under its policies as they fall due, and provision is made for the computation of the reserves by the Insurance Bureau of the State Corporation Commission of the state of Virginia. If a company does not have assets, in excess of the amount of its debts, equal in value to the reserves thus determined, it would not be permitted under these laws to continue in business. In addition, under the laws of the state of Virginia, it must have assets of a value not less than $100,000, representing capital paid in, not by its policy holders, but by its stockholders. As of December 31, 1916, the invested assets of the plaintiff, according to its ledger, had a value of $3,511,889.54. The Virginia Insurance Bureau computed its reserves at $2,719,-535.47.

In the management by the plaintiff of its assets, there is no segregation of the assets to reserves, either physically or on its books. All of the assets constitute a single mass.

Plaintiff on April 1, 1918, filed with the defendant its income and excess profits tax returns for the calendar year 1917, including in its excess profits tax return as "invested capital" its legal reserve required to be maintained by law as of December 31, 1916, amounting to the sum of $2,719,535.47.

The Commissioner refused to permit plaintiff to include in "invested capital" any part of its legal reserve, and levied against plaintiff a war excess profits tax for the calendar year 1917, which, on demand, plaintiff paid under protest.

It is stipulated that, should the court find that as much as $819,234.22 of plaintiff's legal reserve constitutes "invested capital," as that term is defined by Congress in said section

207 of the Revenue Act of October 3, 1917, then plaintiff is entitled to judgment for the amount herein sought to be recovered, to wit, $15,882.44, with interest as provided by law.

Plaintiff applied to the Commissioner for a refund, which was rejected November 18, 1922.

The pertinent provisions of title 2 of the act of October 3, 1917 (40 Stat. 302–306), relating to the war excess profits tax, read as follows:

"Sec. 200. That when used in this title—

"The term 'corporation' includes joint-stock companies or associations and insurance companies. * * * "

"Sec. 201. [Provision for certain percentages of net income.]"

"Sec. 203. That for the purposes of this title the deduction shall be as follows, except as otherwise in this title provided—

"(a) In the case of a domestic corporation, the sum of (1) an amount equal to the same percentage of the invested capital for the taxable year which the average amount of the annual net income of the trade or business during the *pre-war period* was of the invested capital for the prewar period (but not less than seven or more than nine per centum of the invested capital for the taxable year), and (2) $3,000. * * * "

"Sec. 207 [40 Stat. 306]. That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title, nor money or other property borrowed, and means, subject to the above limitations:

"(a) In the case of a corporation or partnership: (1) Actual cash paid in; (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment; * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year. * * * "

The sole issue in this case is whether plaintiff's legal reserve of $2,719,535.47, or any part thereof, constitutes "invested capital," as that term is defined by section 207 of the Act of October 3, 1917.

The suit was begun in 1924, and has remained inactive on the docket ever since, because it was agreed that it was not desirable to press the trial until after the decision of the Supreme Court in the case of Duffy v. Mutual Benefit Life Insurance Company, then pending. The Duffy Case was decided by the Supreme Court November 29, 1926 (272 U. S. 613, 47 S. Ct. 205, 71 L. Ed. 439), and it is now insisted by the plaintiff that the decision in that case is decisive of the issue presented in the case at bar; while, on the contrary, the Commissioner insists that the question in this case was not decided in the Duffy Case, and is therefore still open.

The only substantial difference between the Duffy Case and this case is the single fact that in the Duffy Case the taxpayer was a "mutual life company," while in the case at bar the taxpayer is a "stock life company." A mutual company has no capital stock, and its policy holders constitute its members, who in turn elect its board of directors or trustees, through whom its business is conducted and the distribution of earnings in the shape of dividends to policy holders made. Its assets consist of investments made from money contributed by the parties insured in the form of premiums on insurance issued by the company, and not of capital subscribed or furnished by outside parties. A stock life insurance company is one in which the initial capital investment is made by the subscribers to the stock, and the business is thereafter conducted by a board of directors elected by its stockholders, and, subject to state statutes, the distribution of earnings or profits as between stockholders and policy holders is determined by the board of directors. But, outside of the question of distribution of profits, the business is conducted in the same general way by each, and the "reserve" which each class of company is required by law to maintain is made up in the same way and from the same sources, and subject to the same legal safeguards, and is carried on the balance sheets of both companies in the same way.

In the case of the Mutual Benefit Company (Duffy v. Mutual Company, supra), the "reserve" having been disallowed by the Commissioner as *"invested capital,"* suit was brought to recover the tax paid. The case was decided against the government. The sole issue there was "whether * * * the legal reserve * * * is invested capital, within the meaning of section 207(a) of the Revenue Act (1917)." Duffy v. Mutual Co., supra. It is likewise the sole issue here.

It was the contention of the collector in that case that, under subdivisions 1 and 2 of section 207(a), invested capital must be either cash or tangible property paid in for

stock or shares of the corporation, and that, inasmuch as the company had no stock or shares, its legal reserve was not invested capital, within the meaning of those subdivisions, and that it was not surplus or undivided profits, within the meaning of subdivision (3), because it was no more than the equivalent of the obligations of the company under its policies of insurance, and hence represented a present existing liability.

The only difference between the position of the collector in this case and that is that, though in this case the company has stock, *admittedly* the "reserve" was not paid in on account thereof, and therefore it may not, in the ordinary and usual interpretation of the language of the act, be included under subdivisions (1) and (2), and as to subdivision (3), here as there, because it represents an existing liability or an obligation of the company to its policy holders, fixed and established by the Virginia law, and is therefore a debt rather than a surplus.

In the decision in the Duffy Case, the Supreme Court conceded, for the purposes of that case (and see, also, La Belle Iron Works v. U. S., 256 U. S. 377, 51 S. Ct. 528, 65 L. Ed. 998), that the words in subdivision (2) qualify the words in subdivision (1), and that, so qualified, the intention of Congress was to make paragraph (1) read, Actual cash paid in for stock or shares of such corporation or partnership; but the Supreme Court held that, since a mutual company was without shares of stock, and since the "reserve," or a large part of it, was built up out of funds contributed by the policy holders, who, as policy holders, are members of the corporation, such payments were contributions by them for shares in a common fund, and thus met the requirements of subsections (1) and (2); that is to say, the legal reserve of a mutual life company is "invested capital," because it is cash paid in for shares in the corporation, which is equivalent to saying that the payment of premiums by a policy holder in a mutual company confers an interest in the fund known as the "reserve," and to this extent makes a policy holder a shareholder and his contribution—i. e., his premiums—cash paid in for shares in such corporation.

It becomes necessary, therefore, in this case to consider, first, whether, notwithstanding the taxpayer here is a stock company, and not a mutual company, its legal reserve built up in identically the same way as in the case of a mutual company; that is, through premiums paid in by participating policy holders and through profits made on the investments of these funds, is invested capital, as much in the one case as in the other.

As has been stated, the business conducted by the Mutual Benefit Company and the business conducted by the plaintiff here are in all respects identical, so far as the character and the method of business and the rights of the policy holders of each company are concerned. The reserve of each company was in each case held for the protection of the company's participating policy holders, whose contributions to the company, plus the increase through investments, had built it up. The companies in each case were required by the laws of the state of their incorporation, respectively, to maintain assets at a sum not less than the amount of the legal reserve required by such laws. In the case of neither company was there any segregation of assets, so as to identify any particular assets as being held against current liabilities, capital stock, surplus, unassigned funds, or reserves.

As of December 31, 1916, the invested assets of the plaintiff amounted to $3,511,889.54. At the same time plaintiff's reserve, required by law to be maintained, amounted to the sum of $2,719,535.47, of which sum $2,234,282.03 consisted of premiums paid by plaintiff's policy holders, and $485,252.97 consisted of interest credited to reserve. The reserve had been steadily built up from the organization of the company. Thus in 1900, it amounted to $4,045; In 1910, to $814,381; and at the end of 1916, to $2,719,535.47.

It is insisted by the collector that this reserve may not be considered as invested capital under subsections (1) and (2) of the act, because it is to all intents and purposes earmarked for the payment at maturity of the policies issued by the company, and represents the amount which ultimately will be due thereunder, or the amount which it will cost the company to reinsure its risks; that it is really nothing more or less than a fund created by the net premiums paid in by policy holders, less the expense of doing business; and that no part of it was ever paid in for shares, as in a mutual company, because the policy holder in a stock company has no share or part in its management. He says, also, that it may not be included under the provisions of subsection (3), because "paid-in surplus" can be taken to mean only cash paid in by a stockholder in excess of the par of the stock, and "earned surplus" the amount of assets over

364

liabilities, created either by earnings in the business or enhancement in values. From this he argues that, since plaintiff's reserve was not paid in for stock, and since also it was not earned in the business, but was wholly the result of contributions made by policy holders, whose relationship to plaintiff is wholly contractual, it is therefore not invested capital, and was rightfully excluded in the computation of the tax.

In the Duffy Case, as we have already seen, the Supreme Court held that a policy holder in a mutual company is a member of the corporation, and that the premium paid in such circumstances constituted cash paid for a share in the reserve, and thus constituted the reserve "invested capital," within the intent of the act. The theory of this necessarily was the relationship created out of the contract between the company and its policy holders, for obviously there was none other; and since the contract in the case of both companies is identical, except as to management, it would seem to follow that the same principle should apply in each.

In the case at bar, more than five-sixths of the value of the legal reserve of plaintiff consists of assets purchased with funds paid in by its participating policy holders. It is quite true they have no right to vote for the persons who shall constitute the board of directors, but in other respects their rights are the same as the same class of policy holders in a mutual company, and in both their contributions have created a fund which the law requires and demands shall be set aside and held for the protection of the rights reserved to them by contract. Active competition for business has made necessary this identity of purpose and method of business, and this fact is well known, for, as the Supreme Court points out in Mutual Company v. Lederer, 252 U. S. 523–534, 40 S. Ct. 397, 401, 64 L. Ed. 698, "while there is a radical difference between stock fire and marine companies and mutual fire and marine companies, both in respect to the conduct of the business and in the results to policy holders, the participating policy commonly issued by the stock life insurance company is, both in rights conferred and in financial results, substantially the same as the policy issued by a purely mutual life insurance company. The real difference between the two classes of life companies as now conducted lies in the legal right of electing directors and officers. In the stock company, stockholders have that right; in the mutual companies, the policy holders, who are the members of the corporation."

In this identity of origin and interest in the reserve in the one case and the other, it is difficult to understand why it should be included in the term "invested capital" in the one and excluded in the other. In both it is the contribution of the same class of persons, under the same contractual relationship, and in both it is held subject to the same trusts. Undoubtedly it was not paid in for stock, in the sense in which a shareholder of a corporation pays for his stock, but it was paid in cash for a share in a common fund, which fund, here, as in the case of a mutual company, was intended for investment, and in both was invested to increase the resources of the company and reduce the cost of insurance, and of this the Supreme Court in the Duffy Case said (272 U. S. 620, 47 S. Ct. 207, 71 L. Ed. 439): "It requires no stretch of the realities to say that, within the meaning of subdivisions (1) and (2) of section 207 (a), the fund * * * created is invested capital." In this view of the case, it seems reasonably clear that the position of the plaintiff that this case is controlled by the Duffy Case is sound and should be sustained.

But I prefer not to base the decision on that point, for it seems to me that an even more convincing ground may be assigned in behalf of plaintiff's right to a favorable decision under the provisions of subdivision (3) of the act. That paragraph defines "invested capital" to include *"paid in or earned surplus* and undivided profits used or employed in the business." The collector resists an interpretation favorable to the plaintiff in this aspect of the case, on the ground that the "legal reserve" of an insurance company, mutual or stock, is a fund earmarked with a present existing liability of the company, and is no more surplus than are the deposits in a bank; that not only is it not a contingent liability, but that it is a present liability, as "definite and certain as that the insured will die"; and that, in the event of insolvency or dissolution of the company, it belongs to the policyholders from whom it came.

It is difficult to follow the argument of the collector in support of this position, for, if I understand the conclusion of the Supreme Court, the contrary was decided in the Duffy Case, where it is said:

"The legal reserve, therefore, constitutes assets of a very permanent character. Originally consisting of the contributions of members only, the earnings now make up considerably more than one-half of the whole. The contributions were made for,

and have been used to serve, the double purpose of protection and of investment. These assets, thus constituted, have never represented indebtedness any more than the capital of a stock corporation subscribed by its stockholders represents indebtedness. Until the maturity of a policy, the policy holder is simply a member of the corporation, with no present enforceable right against the assets. Upon the maturity of the policy he becomes a creditor with an enforceable right. Then for the first time there is an indebtedness. See Mayer v. Attorney General, 32 N. J. Eq. 815, 820–822. In the meantime, each member bears a relation to the mutual company analogous to that which a stockholder bears to the joint-stock company in which he holds stock. In either case, the title to the assets is in the corporation and not in the members or stockholders.

"True, the amount of the reserve is carried on the books as a liability, but only as the capital stock of a stock corporation is carried on its books as a liability. In both instances, it is a form of bookkeeping to balance assets, which in the one case are contributed by the members, and in the other by the stockholders."

The assets which comprise plaintiff's reserve, as has been stated, are made up in part of money paid into the company in the form of premiums on policies, and in part in the increase from putting this money out at interest, or in investing it in securities. The fund thus accumulated is not earmarked to any particular use at any particular time. It, as well as the capital assets of the company, is held in common, and no part is segregated to the "reserve," or identified as belonging to it. It is all used by the company in the business of the company. It is no more liable to the payment of the policies at maturity than is the capital stock of the corporation, and is controlled and used by the company, and invested in the same way and to the same extent. It is reserved by law to provide against liabilities which are in themselves contingent. In the meantime, it is part and parcel of the assets used in the business of the company for purposes of profit, but retained to provide for future and contingent liabilities. Until liability occurs, it is surplus, because it represents the amount of value of present assets over present liabilities.

That this conclusion is in accord with the intent and purpose of Congress in the enactment of the "war excess profits tax" I think is clear, for this purpose was declared to be to reach excessive and unusual profits inuring to individuals or corporations as the result of the war, and it cannot be doubted that life insurance companies were never thought to be in this category, and the result proved this true, for during that period plaintiff's earnings from its invested assets were practically unchanged, and its net profits considerably reduced. Not only is this true, but to hold that plaintiff's reserve is not invested capital would be to place upon it, as a stock life insurance company, burdens which the Commissioner has not applied to fire insurance companies, stock or mutual, and from which the Supreme Court has, in its interpretation of the act in the Duffy Case, released mutual life insurance companies. That Congress intended the law to apply in the case of one class, and not in the case of another, between whom there is only a shadowy distinction, I think is clearly negatived from its failure to say so in so many words.

I am therefore constrained to hold that plaintiff is entitled to judgment for the amount sued for.