**COMMISSIONER OF INTERNAL REVENUE**
**v. ILLINOIS LIFE INS. CO.**
**No. 5469.**

Circuit Court of Appeals, Seventh Circuit.
Nov. 26, 1935.

Rehearing Denied Jan. 9, 1936.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Edward H. Horton, Sp. Assts. to Atty. Gen., for petitioner.

Roy O. West, William M. Klein, and Samuel B. Kraus, all of Chicago, Ill., for respondent.

Before EVANS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The Revenue Act of 1928, c. 852, 45 Stat. 791, § 203 (26 U.S.C.A. § 203 note), provides that net income of life insurance companies shall include gross income, less, among other items, "4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year." In pursuance of this provision, in reporting its income, the respondent deducted, from its gross income for the year 1929, 4 per cent. of the mean of a reserve carried by it, in accordance with the Illinois statute, termed "survivorship investment fund." The Commissioner disallowed the deduction and assessed an additional tax. The Board of Tax Appeals allowed the deduction. The Commissioner now petitions to review the Board's decision. The sole question involved is whether or not the "survivorship investment fund" of respondent is "a reserve fund required by law" within the meaning of the act of Congress.

Respondent is an Illinois life insurance corporation. During the taxable year it issued "survivorship investment" policies, which provide that the company will set aside a specific portion of each premium payment and place the same in the fund under consideration. This fund accumulates by the addition of 3½ per cent. per annum compound interest from the dates of the respective payments. At the expiration of the twenty-year period of a policy, the insured, if living, has the option to continue it as fully paid up without further premium payments and receive in addition thereto payment in cash of the survivorship investment thereto apportioned; or to receive a paid-up nonparticipating life policy, for such amount as can be purchased by the survivorship investment fund at the applicable single premi-

um rate; or to surrender the policy and receive its cash surrender value, plus the portion of the survivorship investment fund apportioned to the policy. If the insured dies prior to the expiration of the twenty-year period, his beneficiary receives the face value of his policy but no part of the investment fund. In such case his contingent interest in the latter lapses in favor of those of the same class who survive the period.

The Illinois statute (Smith-Hurd Ann. St. c. 73, § 261) provides that if any company shall issue any policy under the terms of which stipulated parts of the premiums are to be placed in a separate fund for subsequent apportionment, same "shall be carried as a distinct * * * reserve liability of the company for the benefit of the classes of policies, * * * on which the sum was accumulated." It is further provided that no part of such fund, prior to the time of distribution provided in the policy, shall be considered in determining the surrender values of the policy provided for by the act.

The Supreme Court of the United States, in the case of Helvering, Commissioner of Internal Revenue, v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 55 S.Ct. 572, 575, 79 L.Ed. 1227, because of the conflict in various circuits as disclosed by certain cases [Commissioner of Internal Revenue v. Standard Life Ins. Co. (C.C.A.3) 47 F.(2d) 218; Commissioner of Internal Revenue v. Western Union Life Ins. Co. (C.C.A.9) 61 F.(2d) 207; Commissioner of Internal Revenue v. Great American Life Ins. Co. (C.C.A.10) 70 F.(2d) 133; Continental Assur. Co. v. United States (Ct.Cl.) 8 F.Supp. 474; Cf. Minnesota Mutual Life Ins. Co. v. United States, 66 Ct.Cl. 481; Massachusetts Mutual Life Ins. Co. v. United States (Ct. Cl.) 56 F.(2d) 897], granted certiorari in a case involving the question of whether reserves against matured but unpaid coupons attached to a policy are within the meaning of the Revenue Act. By the terms of the policy the company agreed to accept the coupons involved in payment of premiums or to pay them in cash at any time after maturity, with interest. The court held that the liability upon such coupons was not contingent but matured, unconditional, and absolute, payable in cash or its equivalent, saying: "In life insurance the reserve means the amount, accumulated by the company out of pre-

mium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts. * * * Life insurance matures only upon the death of the insured and the life reserve is based upon that contingency, whereas liability on the matured coupons depends upon no contingency. It follows that the insurance reserves alone constitute the base on which the deduction is to be computed. Reserves against matured coupons are excluded."

It is apparent from the language that the determining element was the fact that the matured coupons no longer represented contingent liabilities.

It is contended by petitioner that the survivorship investment fund here involved is like that involved in the case cited. But we find what, we think, are essential distinctions. Here, there is no matured liability; and there can be none unless the insured shall survive the maturity of his policy. That contingency is uncertain; it may or may not occur; and unless it occurs, the insured has no right to participate in the fund. Whether the company will ever become indebted to the insured, therefore, is contingent and uncertain. Furthermore, the amount payable remains uncertain and undeterminable until the first contingency shall have been removed. It is not possible to determine until the end of the period of the policy whether the insured will ever participate in the fund, or, if he does survive, what the amount of his participation will be.

These facts, it seems to us, effectively distinguish matured liabilities upon coupons, noncontingent in character, from the contingent liabilities protected by the survivorship investment fund.

It is said that the words of the Supreme Court in the Inter-Mountain Case defining life insurance reserves are to be construed strictly, and that we must eliminate from deductible reserves all funds that are not within the original and elemental meaning of life insurance. In this connection respondent also relies upon the decision of the Court of Claims in Minnesota Mutual Life Ins. Co. v. United States, 66 Ct.Cl. 481, certiorari denied 279 U.S. 856, 49 S. Ct. 352, 73 L.Ed. 998, wherein the court held that all accumulated undistributed cash surrender funds are in the nature of savings deposits, not strictly life insurance, and therefore not within contemplation of

Congress when it used the term "reserves required by law."

If we are to limit our conception of life insurance to the narrow class of sums payable in case of death, we shall thereby remove from reserves, it seems to us, all sums accumulated in any reserves payable in case of survivorship. Strictly speaking, perhaps, life insurance does not necessarily include guaranteed cash surrender values. Rather, if we speak literally, life insurance probably includes only policies of insurance, the provision of which is that in case of death, while the policy is in full force and effect, the face thereof shall be paid. But as insurance has developed, life insurance has come to mean more than mere payment of losses in case of death. It has come to include cash surrender values, guaranteed loan values, dividend, endowment, and tontine funds, and other similar variations of the original insurance contract, brought into existence and embodied in insurance contracts to protect the insured, not only in case of death but, also, in case of survivorship. All cash surrender values, guaranteed loan values, tontine, endowment, and dividend payments are payable, not because of death, but because of investment of premiums for the benefit of an insured who has survived, and if we begin to eliminate such of these funds as represent the accumulation of investment of premiums, in the end we shall be compelled logically to eliminate all of them and also to limit our definition of "reserves required by law" to such reserves only as are created as a fund against the payment of death claims. This we do not believe was the intent of Congress; nor do we believe that the Supreme Court intended such construction of the statutory language in the Inter-Mountain Case. In Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 158, 64 L.Ed. 297, in discussing reserves, the court said: "The term 'reserve' or 'reserves' has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—'reserved'—as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment."

In the later case, United States v. Boston Ins. Co., 269 U.S. 197, 46 S.Ct. 97, 70 L.Ed. 232, the court modified this conclusion by eliminating the last class, "claims accrued, but contingent and indefinite as to amount or time of payment"; but it did not restrict further its previous announcement. So, here, we have an investment survivorship fund which, in the language of the Supreme Court, "is set aside—'reserved'—as a fund with which to mature or liquidate, either by payment or reinsurance * * * future unaccrued and contingent claims." It follows that if this definition of "reserve" is followed, then the fund which provides against future contingent claims of an unknown class of survivors for unknown amounts is a legitimate part of the "reserves" which Congress had in mind.

We prefer to believe that all life insurance in its essential attributes is not a mere gambling contract, against the contingent stake of which reserves are maintained, but rather an investment program under the terms of which "the members pay premiums which when invested would, if the member lived exactly the average life, produce the sum agreed to be paid. Those who do not reach the expected age gain, those who exceed the age lose, but in the long run there cannot be either gain or loss. The policy-holder takes his chances of being a gainer or loser, but the fundamental idea is investment." Eckersley v. Federal L. Assur. Co., 2 Ont.W.N. 1274, 19 Ont.W.R. 507, 508. Another expression of the same idea is found in 37 C.J. 360 as follows: "Life insurance is not a means of raising wealth, but in its most usual form is simply a mode of putting by money for savings, and in this sense is an investment of money." And this is the view quite generally adopted in this country, a typical statement being that in Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948, 950, reading thus: "The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least divest the contract or policy of its chief character of insurance on life, or make the contract other than life insurance."

Life insurance to-day is not limited to policies for the payment of losses in case of death. Thus we have endowment insur-

ance, the validity of which has long been recognized (Briggs v. McCullough, 36 Cal. 542); and in some jurisdictions, similar thereto, tontine or semitontine insurance policies, the latter of which the present policy is an example. 37 C.J. 363; Gourley v. Northwestern Nat. Life Ins. Co., 94 Okl. 46, 220 P. 645; Uhlman v. New York Life Ins. Co., 109 N.Y. 421, 17 N. E. 363, 4 Am.St.Rep. 482. This class of insurance, which includes a provision for the payment of a specific sum upon death and in addition provisions for payment of accumulated funds upon survivorship of the tontine period, is not essentially different from endowment insurance. The variance is one of degree only. That the amount payable under the endowment plan will be paid is certain at all times, but under the tontine plan, that event is contingent upon survivorship. That contracts of endowment or tontine character, where recognized by statute, are properly insurance contracts is apparent from the decisions. The enlargement of the term, life insurance, is dwelt upon in Briggs v. McCullough, 36 Cal. 542, where the court says that the covenant to pay a sum at the expiration of a certain period does not divest the contract of its character of life insurance. To the same effect, holdings concerning endowment provisions are Endowment & Benevolent Association v. State, 35 Kan. 253, 10 P. 872; Rothschild v. New York Life Ins. Co., 97 Ill. App. 547; Townsend v. Equitable Life Assurance Society, 263 Ill. 432, 105 N.E. 324.

The liability under all policies, until it is determined to whom the payments are to be made and in what sum they shall be made, is contingent. Thus in Cooley's Briefs on Insurance (2d.Ed.1927) it is said: "Until the expiration of the tontine period, the liability of the company is contingent. Avery v. Equitable Life Assur. Soc., 117 N.Y. 451, 459, 23 N.E. 3. On the expiration of the period, the relation of debtor and creditor arises." In Avery v. Equitable Life Assurance Society, 117 N.Y. 451, 23 N.E. 3, 4, the court said:

"The character of such policies is described * * * as involving the amount of the fund out of which the dividend shall be paid to the surviving holder in uncertainty, and hence creating a liability on the part of the company to him under such a policy which was necessarily contingent, and could only be determined when, at the end of the dividend period, the aggregate of the fund, from accretions, interest, etc., could be ascertained for division among the survivors." The Supreme Court in Duffy v. Mutual Benefit Life Ins. Co., 272 U.S. 613, 47 S.Ct. 205, 206, 71 L.Ed. 439, said: "Until the maturity of a policy, the policyholder is simply a member of the corporation, with no present enforceable right against the assets. Upon the maturity of the policy he becomes a creditor with an enforceable right. Then for the first time there is an indebtedness."

In the Inter-Mountain Case the court found that the holders had become creditors, all coupons having matured, and that there was a matured obligation and indebtedness. This position was entirely consistent with that of the court in its previous holdings in McCoach v. Insurance Co., 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333, and other cases, wherein it held reserves against matured unpaid losses not within the meaning of regular reserves. The basis of the prior opinions was the fact that the loss had occurred, the policy matured, and the indebtedness thereon ripened into maturity. There was no longer any contingency, but a presently existing liability—an indebtedness no longer within the protection of regular reserves for contingent liabilities.

We conclude that the funds in the present instance were a special reserve, under a proper insurance contract, intended for the protection of contingent liabilities and within the meaning of reserves of life insurance companies as intended by Congress and as defined by the Supreme Court.

Accordingly, the decision of the Board of Tax Appeals is affirmed.