## MUTUAL FIRE INS. CO. OF GERMANTOWN v. UNITED STATES.

### No. 8472.

Circuit Court of Appeals. Third Circuit.

Argued Feb. 10, 1944.

Decided April 28, 1944.

[1] See R. E. Schanzer, Inc. v. Bowles, Em.App.1944, 141 F.2d 262.

Robert T. McCracken, of Philadelphia, Pa. (Horace Michener Schell and Montgomery, McCracken, Walker & Rhoads, all of Philadelphia, Pa., on the brief), for appellant.

Paul R. Russell, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH, and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania in favor of the United States denying the taxpayer's claim to the recovery of alleged overpayments of its 1938 income tax. The taxpayer claimed that it was a mutual fire insurance company which used or held its income for the payment of losses or expenses and consequently that it was entitled to be treated as a tax exempt corporation by virtue of Section 101(11) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code § 101(11).[1] In the alternative it claimed that if it were subject to tax it would be entitled to the benefit of Section 207(c) (3) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev. Code, § 207(c) (3),[2] which authorizes mutual fire insurance companies to deduct from their gross income the amount of premium deposits retained by them for the payment of losses, expenses and reinsurance reserves.

The District Court denied the claim to tax exemption because it found that the taxpayer was not a mutual fire insurance company. It also concluded that the taxpayer was not entitled to the special deductions allowed mutual insurance companies by Section 207(c) (3). 50 F.Supp. 665. The taxpayer contends that each of these conclusions is erroneous.

Neither the Revenue Act of 1938 nor the prior revenue laws define what is meant by a "mutual" fire insurance company nor do they specify the tests to apply in determining whether a taxpayer is a mutual fire insurance company. The taxpayer urges that when the taxing act is silent the local law must determine and that by the

[1] "Sec. 101. Exemptions from tax on corporations.

"The following organizations shall be exempt from taxation under this title—

\* \* \* \* \* \* \*

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses."

[2] "Sec. 207. Mutual insurance companies other than life.

\* \* \* \* \* \* \*

"(c) Deductions. In addition to the deductions allowed to corporations by section 23 the following deductions to insurance companies shall also be allowed, unless otherwise allowed—

\* \* \* \* \* \* \*

"(3) Mutual insurance companies other than life and marine. In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policyholders and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves."

law of Pennsylvania it is a mutual fire insurance company.[3] When to apply the local law in construing federal taxing acts and when not to do so is a problem which continues to perplex the courts.[4] It is settled that local laws are determinative if the taxing act so provides, either expressly or by inference.[5] Subject to this exception the admonition in Burnet v. Harmel, 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, that the taxing act "is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation" still holds good.[6] Acting upon this principle of uniformity in interpretation of the tax laws the Supreme Court has applied general rather than local law in $_0$ determining whether a taxpayer was an insurance company.[7] We think the District Court in the present case properly looked to the general law rather than the local law to determine whether the taxpayer was a mutual company within the meaning of the taxing act. Relying upon the general law the District Court held that one of the essential characteristics of a mutual company is that it provide fire insurance protection to its policyholders substantially at cost. It found that the taxpayer lacked this characteristic.

In no case, urges the taxpayer, has any court denied a mutual fire insurance company the status of a tax exempt corporation solely upon the ground that it did not provide insurance to its policyholders at cost. So far as our research discloses this is so. There are, however, several cases in this circuit in which it has been clearly indicated that this is one of the fundamental characteristics of a mutual company. The earliest of these cases, Mutual Benefit Life Ins. Co. v. Herold, D.C.N.J.1912, 198 F. 199 involved a life insurance company. In that case the question before the court was whether the taxpayer, a mutual life insurance company, was subject to tax under the Corporation Excise Tax Act of 1909 upon so much of the premiums as it returned or credited to its policyholders. The court's ruling was that such amounts represented payments by the policyholders and not profits of the company. Judge Cross gave a lucid exposition of the manner in which level-premium mutual insurance companies operated and, referring to the portion of the premium paid in excess of the actual cost of insurance, said (page 205): "This excess payment represents, not profits or receipts, but an overpayment—an overpayment because, being entitled to his insurance at cost and having paid more than it cost, he is equitably entitled to have such excess applied for his benefit." This decision was affirmed by this court in a per curiam opinion, 201 F. 918, and certiorari was denied by the Supreme Court, 231 U.S. 755, 34 S.Ct. 323, 58 L.Ed. 468.

That this was a correct description of the manner in which a mutual insurance company operates may be concluded from Justice Brandeis' statement in Penn Mutual Co. v. Lederer, 1920, 252 U.S. 523, in which he said at page 525, 40 S.Ct. 397, at page 398, 64 L.Ed. 698: "In a mutual company, whatever the field of its operation, the premium exacted is necessarily greater than the expected cost of the insurance, as the redundancy in the premium furnishes the guaranty fund out of which extraordinary losses may be met, while in a stock company they may be met from the capital stock subscribed. It is of the essence of mutual insurance that the excess in the premium over the actual cost as later ascertained shall be returned to the policy holder."

In Mutual Ben. Life Ins. Co. v. Duffy, D.C.N.J.1924, 295 F. 881, affirmed by this court in a per curiam opinion, 3 F.2d 1020, affirmed by the Supreme Court on another point, 272 U.S. 613, 47 S.Ct. 205, 71 L.Ed. 439, the court held that the legal reserve of a mutual life insurance company, consisting of premiums paid by the members and earnings upon premiums, was invested capital within the war excess profits tax of the Revenue Act of 1917. In its opinion the District Court said at page 887 of

---

[3] Citing Pennsylvania Act of May 17, 1921, P.L. 682, §§ 201, 534, 40 P.S.Pa. §§ 381, 674.

[4] Estate of Rogers v. Commissioner, 1943, 320 U.S. 410, 64 S.Ct. 172; Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Paul-Selected Studies in Federal Taxation (Second Series) The Effect on Federal Taxation of Local Rules of Property; Cahn-Local Law in Federal Taxation—52 Yale L.J. 799 (1942).

[5] United States v. Cambridge Loan & Bldg. Co., 1928, 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180; Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

[6] United States v. Pelzer, 1941, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913.

[7] Bowers v. Lawyers' Mortgage Co., 1932, 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690.

295 F.: "Mutual insurance companies are not in business or trade in the ordinary acceptation of these terms. They are distributors, not producers, of wealth. Their business is, as stated, to insure their members at cost. In this business some gains are planned and expected, but only to reduce the cost of insurance. To this end the premiums—the only primary source of revenue—are purposely made larger than the calculated bare cost of insurance. This excess is invested and the income thereof compounded. Whatever the gains, they are distributed, not as dividends in the ordinary sense, but to reduce the cost of insurance to the members."

The principle that mutuality involves insurance at cost has likewise been applied by this court to fire insurance companies. In MacLaughlin v. Philadelphia Contributionship, 1934, 73 F.2d 582, 584, certiorari denied 294 U.S. 718, 55 S.Ct. 544, 79 L.Ed. 1251, this court was called upon to construe Section 231(11) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Code § 101 (11), which accorded to mutual fire insurance companies a tax exempt status. The court held that the taxpayer was not entitled to tax exemption because it did not use or hold its income solely for the payment of losses and expenses but rather for investment for the benefit of its members. Commenting upon the section which provided the tax exemption we said: "But section 231(11) was intended to apply to those mutual insurance companies whose sole purpose is to provide protection for its members at cost. In such organizations, the cost of insurance is defrayed by assessments, or payments to meet losses and expenses. The consideration of profits is never involved."

In Driscoll v. Washington County Fire Ins. Co., 1940, 110 F.2d 485, certiorari denied 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421, this court held that the taxpayer was not a mutual company because it lacked democratic control, since but 16 of its more than 3,000 policyholders were entitled to vote to elect directors. Judge Biggs in the course of his discussion upon another aspect of the case, namely, whether the taxpayer used or held its income solely for the payment of losses or expenses, reiterated

that it is of the essence of mutual insurance that the excess in the premiums over the actual cost as ascertained shall be returned to the policyholders, in other words, that mutuality implies insurance at cost.

In Keystone Mut. Casualty Co. v. Driscoll, D.C.Pa.1942, 44 F.Supp. 658, the taxpayer claimed to be a mutual fire insurance company entitled to tax exemption by virtue of Section 101(11) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev. Code, § 101(11). This claim was denied. Judge Gibson said: "The consensus of the opinions is that the section contemplates an association of individuals whose sole object is to obtain insurance for themselves at cost, and, if amounts greater than necessary cost have been collected, that excess was to be returned to members in some form." Upon appeal this court denied the claim for exemption upon the ground that the income of the company was not held solely for the payment of losses and expenses. Judge Biggs pointed out, however, that the taxpayer was not a mutual company such as was contemplated by Congress because of its failure to provide insurance at cost. 1942, 137 F.2d 907.

It will thus be seen that this court has consistently adhered to the view that one of the essential characteristics of a mutual insurance company is that it provide insurance to its members substantially at cost.

We think that the history of the early development of mutual insurance companies justifies this view. The earliest mutual insurance companies were of the assessment type in which each member was assessed for losses and expenses either immediately upon the happening of the loss or at the end of the year. Because these companies were organized without cash capital and frequently in order to comply with statutory requirements, the members gave premium notes obligating themselves to pay as and when assessed. It is obvious that no profits were possible in such a cooperative organization since the company served merely as a conduit for the collection from the members at large and payment to the particular members suffering losses of the amounts needed to cover their losses.[8] At first it was thought that all mu-

8 R. W. Bartlett—The Organization and Development of Co-operative Fire Insurance Companies in New York, Cornell University Agricultural Experiment Station.

tual companies had to operate upon the assessment principle. The courts, however, soon accepted the view that an insurance company could be a mutual even though it received the premium in cash in advance and even though the policyholder was not subject to assessment.[9] In such a mutual company each member is the insurer of the others only in the sense that his cash premium supplies the capital with which to reimburse other members for losses when they occur.

Whether the mutual company was of the assessment type or of the advance premium type the main advantage sought by the members, insurance at cost, remained a dominant factor.[10] For in the advance-premium company as in the assessment company no outside capital was invested and there was no need to pay profits to stockholders. And if the company operated more economically than anticipated the excess of the advance premium over cost could be, and, as we have seen, was returned to the policyholders. We turn therefore to an examination of the facts to determine whether the taxpayer operated upon the principle of providing its members with fire insurance substantially at cost.

■ The taxpayer is a Pennsylvania corporation, chartered in 1843 as a mutual fire insurance company, and does business in Philadelphia, Montgomery and Bucks Counties in Pennsylvania. It issues both perpetual and term insurance policies. In 1938 it amended its charter, effective June 8, 1938, so as to enable it to issue extended coverage contracts. It charges the same rates as do the stock companies and pays the same brokers' commissions. It does not sell insurance at reduced rates or give rebates to its policyholders. The taxpayer has at no time made any assessments against its policyholders. Except in the year 1873 when it issued scrip for $36,377.-43 the taxpayer has made no distribution by way of dividends of profits or savings or redundancy payments to its policyholders. By the express terms of the Pennsylvania

statute under which it has operated since June 8, 1938 [11] it is prohibited from making any such payments now or in the future. That statute requires the company to retain all its surplus earnings "as a reserve for the payment of losses and expenses" and provides that in case of dissolution the surplus remaining after the return of unearned premiums on policies then in force shall escheat to the Commonwealth of Pennsylvania.

·During the five years 1934 to 1938, inclusive, the results of the taxpayer's insurance underwriting ranged from a net profit of $17,656.02 in 1934 to a loss of $11,-436.68 in 1938 and its net income from investments ranged from $114,850.59 in 1936 to $80,435.46 in 1938, the average annual combined net income from both sources during the five years period being $95,793.-80. As a result of the accumulation of these earnings the taxpayer's surplus or contingent fund, which on December 31, 1933, had been built up to a sum in excess of $2,800,000, had on December 31, 1938, reached $3,156,049.07. These figures, considered in the light of the fact that but one distribution has been made to its members by ·the taxpayer in one hundred years of corporate existence, make it abundantly clear that certainly in recent years and probably during most of the taxpayer's history its members have not received their insurance at a figure which even approximated cost. We conclude that the trial judge's finding that the taxpayer does not provide insurance to its members at cost is amply sustained by the evidence. It follows that he correctly held that the taxpayer is not a mutual company within the purport of the Revenue Act and that it is not entitled to be accorded the status of a company wholly tax exempt.

■■ Another of the essential characteristics of a mutual insurance company is the common equitable ownership by the members of the assets of the company, which may at their option be transformed into a legal title and reduced to possession by the dissolution of the company.[12] We

9 Union Insurance Company v. Hoge, 1858, 62 U.S. 35, 16 L.Ed. 61; Mygatt v. N. Y. Protection Ins. Co., 1860, 21 N. Y. 53.

10 White v. Haight, 1857, 16 N.Y. 310.

11 Pennsylvania Act of May 25, 1921, P.L. 1124, 40 Pa.P.S. § 677.

12 Keystone Automobile C. Cas. Co. v. Commissioner of Int. Rev., 3 Cir., 1941, 122 F.2d 886, certiorari denied 315 U.S. 814, 62 S.Ct. 799, 86 L.Ed. 1213; Huber v. Martin, 1906, 127 Wis. 412, 105 N.W. 1031, 1135, 3 L.R.A.,N.S., 653, 115 Am. St.Rep. 1023, 7 Ann.Cas. 400.

think that the absence of this characteristic in the present case likewise supports the judgment of the District Court. Since June 8, 1938, the members of the taxpayer have had no interest in the taxpayer's surplus except as a fund to assure the payment of claims upon their policies. In a true mutual insurance company the members, if they vote to wind up and dissolve the company, are entitled to receive its net assets upon dissolution. Not so the members of the present taxpayer. They may cause the dissolution of the company but if they do so they are entitled to receive out of its assets only the return of the unearned premiums under their policies then in force. The balance of the company's assets must then pass into the treasury of the Commonwealth of Pennsylvania. There is thus disclosed such a lack of interest by the members in the taxpayer's assets as to take the taxpayer out of the statutory class of mutual insurance companies upon this ground alone.

As additional grounds in support of the judgment of the District Court the Commissioner urges that the taxpayer is not entitled to the exemption from taxes afforded by Section 101(11) because it is not an insurance company within the meaning of that section and because it does not use or hold its income solely for the purpose of paying losses or expenses. In view of our conclusion that the District Court rightly held the taxpayer not to be a mutual company within the meaning of the Revenue Act we find it unnecessary to consider these contentions.

As we have stated, the District Court also denied the taxpayer's claim to the special deductions accorded by Section 207(c) (3) of the Revenue Act of 1938. In view of our determination that the taxpayer is not a mutual company it must follow that it is not entitled to the special deductions from its gross income allowed only to mutual insurance companies. Moreover, we are in entire accord with the District Court's conclusion that the deductions should be disallowed in any event because the taxpayer had already taken credit for a like amount as losses and expenses paid during the year.

The judgment of the District Court is affirmed.